JUCKER, Administrator, vs. THE CHICAGO & NORTHWESTERN
RAILWAY COMPANY.

*March 30 — April 19, 1881.*

*(1) Court and jury: Nonsuit.   (2) "Proximate cause."   (3) Case stated:
Evidence sufficient to take case to jury.*

1. In an action at law, where there is any evidence upon which the jury would
    be justified in finding a verdict for the party who has the burden of
    proof, the case should not be taken from them.
2. The proper legal meaning of the term "proximate cause," discussed.
3. In an action against a railway company for injuries to a child causing its
    death, the plaintiff's evidence tended to show that the child was twenty-
    two months old, and previously in good health; that defendant's en-
    gine struck the child, and threw it into the air and about fifteen feet
    away from the track; that it was taken up senseless and with one leg
    broken; that the broken limb was adjusted and bandaged by physicians,
    who continued to treat the child, and whose directions and prescriptions
    were strictly followed; that a cough set in directly after the injury, and
    the child manifested great pain and nervous irritability, with sleepless-
    ness, lack of appetite, etc.; that in a few days it had an unnatural ap-
    pearance of the eyes; that these symptoms continued and increased until
    its death; that about eight days before its death it grew much worse,
    and was alternately hot and cold, and its face frequently flushed and
    red; that a few days before death the physicians removed the splints
    and bandages from the broken limb; and that the death occurred about
    a month after the injury. *Held,* that upon this evidence the jury would
    have been justified in finding that the death was caused by the injury
    inflicted by defendant.

APPEAL from the Circuit Court for *Fond du Lac* County.

Action for an injury to an infant child, causing its death.
Plaintiff appealed from a judgment of nonsuit.

The evidence in plaintiff's behalf is sufficiently stated in the
opinion.

For the appellant there was a brief by *Shepard & Shepard,*
and oral argument by *T. R. Shepard.*

For the respondent there was a brief by *C. A. & A. B.
Eldredge,* and oral argument by *A. B. Eldredge.*

ORTON, J.  The rule laid down in *Improvement Co. v. Munson*, 14 Wall., 448, cited by the learned counsel of the respondent, and commented upon and approved in *Pleasants v. Fant*, 22 Wall., 122, has been substantially recognized by this court in numerous cases.  That rule is: "If there is any evidence upon which the jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed, the court cannot take the case from the jury.  The question is, Is the evidence sufficient to justify a verdict?" By the very terms of this rule, the question is not, whether the *court* would have found a verdict in the case made by the evidence, but whether the *jury* would have been *justified* in finding a verdict upon it.  The party is entitled to the verdict of the jury, rather than the finding of the court, on questions of fact, if the jury would be warranted or "justified" in finding a verdict upon the evidence.  When properly considered, there is scarcely a seeming conflict of authority in respect to the rule for granting nonsuits and ordering verdicts by the court, in jury trials.

Tested by this rule, ought the circuit court to have granted a nonsuit in this case?  We think there was testimony sufficient to justify the jury in finding that the company was negligent, and that the mother of the child used ordinary care, under the circumstances, to guard and restrain it from straying upon the track of the railroad, and to prevent this and similar accidents happening to it.  We do not understand that the learned counsel of the respondent relies very strongly upon these two points; but he insists with much more plausibility that there was not sufficient evidence that the injury of the child at the time of the accident caused its death, to be submitted to the jury, or, in other words, that there was not sufficient evidence to justify the jury in so finding.  Whether the death of the child directly and naturally resulted from the alleged injury as its proximate cause, is an important question, and as difficult to determine as a like question in criminal

homicide, although by a different rule of evidence as to its weight and effect. This being a civil action, a preponderance of the evidence or a *prima facie* case unrebutted, upon this question, would justify a verdict, as in other civil cases. Where the death did not result immediately or very soon after the injury, as in this case, the question is still more difficult, and would seem to present a very proper case for the testimony of the attending or other physicians cognizant of the facts. But although it is a question of medical jurisprudence, and a proper one for medical testimony, yet I know of no rule established by judicial authority that makes medical testimony in such a case indispensable. The jury must determine the question upon the facts proved, as in other cases, and the evidence, whether professional or not, must be sufficient to justify their verdict.

I shall not enter into the refinements which have been put upon the maxim, "*In jure non remota causa, sed proxima, spectatur*," but state the rules generally recognized and approved by the authorities, and applied in cases of this sort, by which it must be determined whether the jury in this case would have been justified in finding from the evidence that the injury was the sole cause of the death of the child, and that therefore its death was caused by the negligence of the company. The general rule laid down by Chief Justice APPLETON in *Moulton v. Sanford*, 51 Me., 134, and cited approvingly by Chief Justice DIXON in *Sutton v. Town of Wauwatosa*, 29 Wis., 21, is as follows: "The cause of an event is the sum total of the contingencies of every description, which being realized the event invariably follows. It is rare, if ever, that the invariable sequence of events subsists between one antecedent and one consequence. Ordinarily, that condition is usually termed *the cause* whose share in the matter *is the most conspicuous, and is the most immediately preceding and proximate to the event*." In further exposition of the rule, it may be said here, as in *Kellogg v. C. & N. W. Railway*

*Co.*, 26 Wis., 223, that "the maxim, however, is not to be controlled by time or distance, but by the succession of events," and that "the natural and ordinary means" to produce the alleged consequence must be shown; and, as in Wharton on Negligence, § 78 et seq., that the party "might have reasonably expected" such a consequence of his negligence, or that such a result would be "an ordinary natural sequence from such a cause;" or, as said by Chief Justice COCKBURN in *Clark v. Chambers*, 13 Am. Law Rev., 175, such a consequence would be "probable" from such a cause. In illustration of the rule, and in its application to that case, it is said, in *Perley v. Eastern Railroad Co.*, 98 Mass., 414: "It is as much so as pain and disability are proximate effects of an injury, though they occur at intervals through successive years after the injury was received. Yet these are called proximate effects, though the actual effects of the injury may be greatly modified in every case by bodily constitution, habits of life, and accidental circumstances." It may properly be added, further, that the cause of the alleged consequence itself must have been "adequate and efficient." Wharton on Negligence, § 73. These rules have been applied with so much clearness to a variety of cases in this court, that cases elsewhere need not be cited. *Oliver v. Town of La Valle*, 36 Wis., 592; *Stewart v. City of Ripon*, 38 Wis., 584; *Hall v. City of Fond du Lac*, 42 Wis., 274; *Holmes v. City of Fond du Lac*, id., 282.

It remains only to apply these rules to the evidence of this case. The child was of the age of one year and ten months, and in good health. It was on the railroad track with another small child, who left the track just before the train arrived. The train approached at the speed of about fifteen miles per hour, and the engine came in contact with the child and threw it into the air and off and away from the track about fifteen feet. When the child was taken up, it was senseless, and one of its legs was broken and its head bruised. Two physicians were called, who adjusted and bandaged the broken limb and

continued to treat the child, and their directions and prescriptions were, in all cases, strictly followed. A cough set in directly after the injury, and the child manifested great pain and suffering, was irritable, restless, and able to sleep but little. It cried almost constantly, and frequently seized its own hair with its hands and threw its arms about its head. It appeared to be very sick, and was pale and without appetite for food except milk. In a few days it had an unnatural appearance of the eyes. These symptoms continued and increased until death. About eight days before its death it grew much worse, and cried less, because unable to do so, and was alternately hot and cold, and its face frequently flushed and red. A few days before death, the physicians removed the splints and bandages from the broken limb. The child was injured on the 6th day of June, and died on the 8th day of July.

It seems to us that this evidence supplies every requisite of the above rules, and makes a clear *prima facie* case, at least, that the death of this child was caused by its injury. The terrible violence with which it was thrown into the air and away from the track, by the engine running with such speed, certainly furnishes an "adequate and efficient cause of death." It is only surprising that the child was not killed instantly. Its continuous symptoms and sickness, beginning with the injury and ending in death, furnish a series of effects and consequences from such an adequate and efficient cause, natural, continued and unbroken to the end. There was no other intervening cause or causes shown by the evidence to break this continuity of sequence, or that could have produced death. The death of the child was a result very probable from such a cause, and which might have been reasonably anticipated by the defendant, and was the natural and direct consequence of the defendant's negligence, so far as the court could know from the evidence. We are clearly of the opinion that there was testimony sufficient to have justified the jury in finding a verdict for the plaintiff, and that the circuit court

ought not to have arrested the trial by a nonsuit. We are also of the opinion that the question, "What movement, if any, did the child make with its eyes?" at a certain stage of its sickness, was a proper one, asking for a physical appearance of precisely the same character of all of the other evidence which was admitted.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial therein.