ELISABETH LUNDE as Administratrix of the Estate of Emil Lunde, Deceased, Appellee, v. THE CUDAHY PACKING COMPANY, Appellant.

**New trial.** The trial court's finding on an issue of fact as to the misconduct of a juror presented in a motion for new trial by affidavits, and which has support in the evidence, will not be disturbed on appeal.

**Same:** MISCONDUCT OF JUROR. The statement of a juror on *voir dire* that he had no prejudice in cases like that on trial, but could give the case impartial consideration and return a fair verdict, and upon his like examination in a subsequent case of like character against the same defendant, his answer that he had a prejudice in that class of cases which might or would influence his verdict, was not necessarily such discrepancy of statement as to establish misconduct vitiating the first verdict.

**Master and servant:** FAILURE TO WARN. Where there is evidence in an action for injury to an employe tending to show the nature and extent of the instruction or warning given the employe, the master's negligence in that regard becomes a question for the jury.

**Contributory negligence:** INSTRUCTIONS. Where the court fully instructs that there should not be a finding for plaintiff, in an

action for negligence, unless the jury is satisfied that he was exercising reasonable care for his own safety and did not by his own negligence contribute to his injury, refusal to also charge that if plaintiff approached the machinery by which he was injured for any purpose at a point where the same was not guarded he was negligent as a matter of law was proper, especially as there was no evidence that he did so.

**Instinct of self-preservation:** INSTRUCTION.  An instruction to the effect that where there are no eye-witnesses to an accident the injured party will be presumed to have been in the exercise of due care, in the absence of evidence to the contrary, is not objectionable as relieving him of the burden of proof on that issue, especially where the court also charged that the fact that the accident occurred while he was in defendant's employ and by its machinery afforded no presumption of defendant's negligence, and that plaintiff must show defendant's negligence and his own freedom from contributory negligence.

**Negligence:** ASSUMPTION OF RISK.  An inexperienced employe whose duties require him to work about machinery may assume that his employer has exercised reasonable care for his safety in placing proper guards about the same, unless his peril is so apparent that he ought to know and appreciate the danger to which he is exposed.  Under this rule it will not be held that a boy seventeen years of age required to pass along a narrow walk in oiling a large flywheel, with only two iron guard rails protecting him from the wheel and pit in which it revolved, was negligent as a matter of law, where there was evidence that the rails were set too close to the edge of the pit and too far from the floor.

**Same:** PROXIMATE CAUSE.  While recovery for an injury cannot be had where the evidence shows no more than a possibility that the same is chargeable to defendant's negligence, still neither negligence nor proximate cause is required to be proven beyond a reasonable doubt; and where the proven circumstances are such that different minds may reasonably draw different conclusions, or where all the known facts point to the negligence of defendant as the cause, although the evidence is wholly circumstantial, the question of proximate cause is one of fact.  Evidence held to require submission of the issue.

*Appeal from Woodbury District Court.*—HON. FRANK R. GAYNOR, Judge.

TUESDAY, OCTOBER 27, 1908.

ACTION for the recovery of damages for the death of Emil Lunde, which is alleged to have been occasioned by the defendant's negligence. Verdict and judgment for plaintiff, and the defendant appeals.—*Affirmed.*

*M. L. Sears,* for appellant.

*F. E. Gill,* for appellee.

WEAVER, J.—The defendant corporation is engaged in the business of killing, curing, packing, and selling meats at Sioux City, Iowa. About two or three weeks prior to the date of the accident Emil Lunde, a boy of about seventeen years, was engaged to labor in the engine room of the defendant's works. Lunde had no prior experience in such service, but is described as a steady, sober, careful workman. Among the duties required of him was the oiling of the machinery or of certain portions of it. Included in this machinery was an engine, to which was attached a large and heavy fly wheel about sixteen feet in diameter, the lower part revolving in a pit in the floor. On the south side of the fly wheel and parallel with it was an apparatus known as the ice machine. Between the wheel and the ice machine there was a narrow passageway, intercepted or obstructed midway by the south axle of the fly wheel and the bearing in which it rested. To oil this bearing the usual and appropriate method was for the employe to enter this passageway from the east end. The wheel pit along this end of the passageway was guarded by a double line of gas pipe rails, fastened to posts standing close to the edge. The upper rail was about thirty-six inches, and the lower twenty-five inches above the floor surface. The passage was floored with cement, and was about nine and a half inches in width. The edge of the rim of the wheel hung within about five inches of the guard rail, but the spokes not

being of thickness equal to the width of the rim were twelve inches from the edge of the pit. At the entrance, and nearly opposite the rim of the wheel, this passage was further narrowed by a shive projecting slightly over the path, and carrying a slowly moving rope which operated an oil pump. After passing this point the ice machine curved slightly away from the cement path, giving a somewhat wider passage for the remainder of the way. The width does not definitely appear in the record, but is estimated by some witnesses as two feet or a little more. The testimony also tends to show that in passing the narrowest point a person entering from the east was required to step in sidewise to avoid contact with the shive and rope above mentioned, and that for the remainder of the distance along the cement path he could walk straight ahead, being careful to step one foot directly ahead of the other. There was sometimes frost on the ice box, pipes, and machinery, and a pail of oil sometimes stood on the frame. At times the path was a little oily. The fly wheel pit and passage west of the axle was not guarded by railing or otherwise, and employes were not expected to enter from that side to oil the bearings. Lunde worked on the night shift, and on the night of June 13, 1907, was on duty with the engineer, one Stephenson. It was part of his duty to oil the fly wheel bearings, taking the course we have already indicated. It was also proper for him to inspect the bearings at times to ascertain whether they were becoming heated. About midnight of the day named Lunde was alone in the vicinity of the fly wheel and ice machine. The engineer, Stephenson, being engaged some distance away, heard an unusual sound, and coming to the place found Lunde lying on the floor with broken legs and arms and other severe injuries, of which he soon died. He was not wholly unconscious when discovered, and when asked how the accident occurred, responded, "I don't know," but beyond this he

seems to have been unable to speak. The top guard rail, which had been straight prior to the accident was found to be bent down, and slightly out near the east end and about two feet from the rim of the fly wheel. Lunde's shoes were torn across the toe and doubled back. His clothes were not torn, but were more or less saturated with oil. A little blood was found on the ice pipe east and south of the fly wheel, in the direction of the place where the body was found. The rope running on the shive at the east entrance to the passage was pulled off and hanging in the wheel pit. Later Lunde's wrench was found in the pit.

The petition charges the defendant with negligence leading to the death of the intestate, in the following particulars: First, in failing to furnish the deceased a safe place to work; second, in failing to properly warn or instruct the deceased as to the proper manner of doing the work, and how to avoid danger in its performance. The answer denies all negligence on the part of the defendant, alleges contributory negligence on the part of the deceased, and that he assumed the risk of the danger to which he was exposed.

I. A verdict having been returned for the plaintiff, defendant moved for a new trial because of the alleged misconduct of a juror, one Fred Hewitt. The motion is supported by the affidavit of appellant's counsel to the effect that, in his examination as to his qualification to sit as a juror, said Hewitt stated that he had no bias or prejudice in cases of this nature; that he could, and would, give the case impartial and fair consideration, and return a fair verdict upon the evidence and the law as given by the court. Immediately after the return of the verdict another jury was being impaneled for the trial of a personal injury case against the same defendant, and, the same juror being called into the box, he was again subjected to a similar

1. NEW TRIAL.

examination, and answered that he had a bias and prejudice in this class of cases, which might or would have an influence on the. verdict, on which answers a challenge to the juror was sustained. Counter affidavits were submitted tending to show that the juror was not in fact interrogated as to his personal feelings or prejudices as to cases of this kind in general, and that, so far as the juror had in fact any bias or prejudice, it was in favor of the defense. The overruling of this motion is assigned for error. The assignment is not well grounded. No bill of exceptions or other record was preserved of the examination of the juror, and the matter and manner of it is presented upon affidavits which put the alleged misconduct of the juror in issue, and, the finding of the court upon the disputed facts not being without support in the evidence, we cannot disturb it.

Even if this were not the case, there is no such necessary discrepancy between the two statements of the 2. SAME: miscon-  juror as to justify us in holding him guilty duct of juror.  of misconduct such as will vitiate the verdict in the earlier case.

II. The court submitted to the jury, with appropriate instructions, · the question of the defendant's alleged negligence in failing to properly instruct and warn the deceased. This is said to be 3. MASTER AND  SERVANT: fail-  erroneous, because of the entire lack of ure to warn.  evidence to support the charge. We do not so read the record. There was evidence, on the part of both the plaintiff and defendant, tending to show the nature and extent of the instructions given. They were mostly of a general nature, and few of a specific character. It was not for the trial court, nor is it for this court, to say that as a matter of law such instructions were sufficient, and filled the full measure of the defendant's duty in the premises. Whether such was the case requires a consideration of the age and experience of the

deceased, the peculiar hazard to which his service exposed him, whether they were patent to his observation as an ordinarily prudent person, and all the pertinent circumstances surrounding the transaction, and it was clearly within the province of the jury to draw therefrom the inference or conclusion whether due care had been exercised. There was no error in submitting this issue to the verdict of the jury.

III. The defendant asked the court to instruct the jury that, if the deceased was injured by reason of going in between the frame of the ice machine and the fly wheel on the west side, where there were no guards, he would be guilty of contributory negligence, and plaintiff could therefore not recover. The request was refused. The refusal was not erroneous. The court on its own motion carefully charged the jury that they could not find for the plaintiff unless they were satisfied from all the evidence that intestate was exercising reasonable care for his own safety, and did not by his own negligence in any way contribute to his injury, and we think it would have been an invasion of the province of the jury to charge that the mere fact of going between the wheel and frame on the west side, no matter for what purpose or under what circumstances, was negligence as a matter of law. Moreover, there is no evidence whatever that he did enter the passage on the west side; and, if it be true, as argued, that there was no occasion for his going there, and his duty did not call him there, his administratrix is entitled to the benefit of the presumption that he did not thus recklessly and unnecessarily expose himself to deadly peril.

IV. It is averred that the court erroneously placed upon defendant the burden of showing that the deceased did not exercise due care for his own safety. This objection is based upon a misconception of the force and effect of the charge given by the court. It did not re-

**4. CONTRIBUTORY NEGLIGENCE: instructions.**

lieve the plaintiff from the burden of showing due care on
the part of deceased.  In the fifth paragraph
the jury was told that the mere fact that
Emil Lunde was killed while in defendant's
service and by its machinery afforded no presumption of
defendant's negligence, and that plaintiff was bound to
show, not only that such accident was chargeable to
defendant's negligence, but also that he did not, by his
own conduct, negligence, or carelessness, contribute in
any way to his injury.  The same thought was repeated
in the tenth paragraph.  In the sixth, seventh, eighth,
and ninth paragraphs the law and its application to the
question of assumed risk were fully and fairly stated.
The eleventh paragraph—the one on which the complaint
of the appellant is based—was in the following words:

> Upon the question of plaintiff's intestate's contribu-
> tory negligence you are instructed that, where there are
> no eyewitnesses as to the manner in which he was con-
> ducting himself at the time he received the injuries, the
> law presumes that he was exercising such care and caution
> as men of ordinary prudence, judgment, and discretion
> exercise under like circumstances and in relation to the
> same matters, unless the facts and circumstances shown
> upon the trial negative such presumption; and you should
> indulge in such presumption in his favor, unless the facts
> and circumstances developed on the trial negative such
> presumption.

This in no manner relieves the plaintiff from the
burden of proving the freedom of the deceased from con-
tributory negligence, but states the rule, now well settled,
that this burden may be met, and the fact of due care
may be established, *prima facie* by showing that when
last seen he was acting in the line of his duty, without
any apparent negligence, and that there is no living
witness or direct testimony as to the manner in which his
death occurred.  Under such circumstances, for want of

5. INSTINCT OF
SELF-PRESER-
VATION: in-
structions.

better evidence, the natural caution and instinct of self-preservation which lead the normal and sane human being to avoid injury and death are recognized by this and many other courts as affording ground for the presumption or inference that the deceased did not negligently expose himself to the injury which he suffered, unless there be proof of other facts and circumstances which negative such conclusion. The decision in *Bell v. Clarion,* 113 Iowa, 126, on which appellant relies is not inconsistent with the instruction now being considered. The instruction there held to be erroneous was to the effect that in · such cases the burden of proof, on the question of contributory negligence, is shifted to the defendant, and that the deceased would be held to have exercised due care until the conclusion is "overcome by evidence that satisfies the jury that he was negligent." The instruction in the present case not only does not relieve the plaintiff from the operation of the ordinary rule, which requires her to prove by competent evidence both the negligence of the defendant and the absence of contributory negligence by the deceased, but on the contrary, the charge given the jury is carefully framed to prevent any confusion or misunderstanding on this point. It is also in entire harmony with the law as laid down in numerous cases. *Greenleaf v. R. R. Co.,* 29 Iowa, 14; *Way v. R. R. Co.,* 40 Iowa, 341; *Hopkins v. Knapp,* 92 Iowa, 328; *Salyers v. Monroe,* 104 Iowa, 74; *Dalton v. R. R. Co.,* 104 Iowa, 26; *Crawford v. R. R. Co.,* 109 Iowa, 433; *Baker v. R. R. Co.,* 95 Iowa, 171; *Mynning v. R. R. Co.,* 64 Mich. 93 (31 N. W. 147, 8 Am. St. Rep. 804); *McBride v. R. R. Co.,* 19 Or. 64 (23 Pac. 814); *Lymen v. R. R. Co.,* 66 N. H. 200 (20 Atl. 976, 11 L. R. A. 364); *Penn. R. R. Co. v. Weber,* 76 Pa. 157 (18 Am. Rep. 407); *Cassidy v. Angell,* 12 R. I. 447 (34 Am. Rep. 690); *Johnson v. R. R. Co.,* 20 N. Y. 65 (75 Am. Dec. 375); *Railway Co. v. Landrigan,* 191 U. S. 461 (24 Sup. Ct.

137, 48 L. Ed. 262); *Huntress v. R. R. Co.,* 66 N. H. 185 (34 Atl. 154, 49 Am. St. Rep. 600); *Texas R. R. Co. v. Gentry,* 163 U. S. 353 (16 Sup. Ct. 1104, 41 L. Ed. 186); *Grimm v. Power Co.* (Neb), 114 N. W. 769.

V.  Counsel for appellant insist, also, that under the evidence the court should have held, as a matter of law, that deceased had assumed the risk of the injury which he suffered.  In support of this contention

**6. NEGLIGENCE:** assumption of risk.

it is said that deceased had been employed in the place a long time, that the dangers incident thereto were open to his view, and that, as an ordinarily reasonable and prudent person, he ought to have discovered them, and his administratrix will not be heard to deny his knowledge of them.  It may readily be admitted that there were manifest elements of danger incident to this employment which must have been as patent to this young man, even though inexperienced, as to older and more experienced servants about the premises.  For instance, a boy of ordinary intelligence would need no one to tell him that he could not enter the wheel pit, or come in contact with the wheel while in motion, without endangering his life.  But the duty imposed upon him required him to walk along a narrow path separated from this place of danger by a few inches only, and he had a right to assume that his employer had exercised reasonable care to make the passage safe, unless the employer's neglect, if any, in this respect was so open and obvious that deceased ought to have discovered it and abandoned the employment, and this is not so clear that we are able to dispose of it as a question of law.  It is not correct to say, as counsel does, that the deceased had worked in this capacity for a long time, and that we may fairly presume that he was fully aware of all the matters and things now charged against the defendant as negligence.  His service in this work did not exceed nineteen days, he was a mere apprentice, just learning the work

or trade of stationary engineering, and it would be an undue extension of the province of the court to say as a matter of law that in this time he ought to have learned and comprehended, in all its essential features, the risk to which he was exposed. For instance, experienced witnesses testified that the usual and proper way to guard such a wheel and pit was to set the railing back several inches from the brink of the opening in the floor, and that to avoid danger of slipping into the opening the lower bar should be placed not more than fifteen inches above the floor, while in defendant's engine room the railing was set flush with the edge of the pit, and the lower bar was twenty-five inches from the floor, rendering it possible for a person slipping or falling upon the path to be precipitated into the pit and upon the revolving fly wheel. Under the evidence the jury was justified in finding that this construction was defective, and constituted a breach of defendant's duty to furnish the deceased a safe place to work. To an experienced engineer this defect might be revealed at a glance, but it does not follow that it would be so apparent to a boy of seventeen, just entering such employment, and we think it was properly submitted to the jury to say whether, considering these circumstances and the time he had been in the service, he ought to have known and appreciated the peril to which he was exposed by the defendant's neglect. *Shebeck v. Cracker Co.,* 120 Iowa, 414; *Sachau v. Milner,* 123 Iowa, 387; *Mace v. Boedker,* 127 Iowa, 721; *Woolf v. Nauman,* 128 Iowa, 261.

VI. Other points, made in behalf of the appellant, may be condensed in the proposition that the verdict is not sustained by the evidence. With this contention we can not agree. For reasons already stated we are satisfied that both upon this alleged failure of the defendant to furnish the deceased a reasonably safe place to work, and upon the question whether reasonable care was exer-

cised to properly instruct and warn him concerning the dangers to which he was exposed, there was enough evidence to go to the jury. Upon the question of contributory negligence, the jury, under the rule discussed in the fourth paragraph of this opinion, were justified in finding that his death was not in any degree chargeable to his own want of reasonable care.

But counsel say that, even if we concede the alleged negligence of defendant, there is no evidence from which we may trace any casual connection between such negligence and the death of the deceased. It is 7. SAME: proximate cause. true, as already said, that no eyewitness was produced to testify to the particulars of the accident, and that the cause and manner of the death of the intestate must be drawn as inferences from the facts and circumstances developed on the trial. This, say counsel, leaves the cause of the accident a mere matter of speculation or surmise, but such is not the case. More frequently than otherwise the truth or falsity of any disputed fact proposition is dependent, in greater or less degree, upon circumstantial evidence. It is of course not an infallible guide; neither, indeed, is the direct testimony of living witnesses, but human experience teaches us confidence in its general reliability. Its sufficiency in determining the cause of any given accident is a matter of almost daily recognition by the courts. For example in *Hopkins v. Knapp, supra,* the defendant had left an open elevator shaft without proper protection. An employe being in the upper story of the building alone fell down the shaft and was killed. No one saw him fall, and the cause of the accident was wholly a matter of inference from the surrounding circumstances. This we held to be sufficient to take the case to the jury. The same rule was applied in *Dalton v. R. R. Co.,* 104 Iowa, 26. The late and thoroughly considered case of *Huggard v. Refining Co.,* 132 Iowa, 725, is also in point. There an

employe, while passing under an opening extending
through the upper floors of the employer's factory, re-
ceived a blow upon the head, striking him senseless.
There was no other witness of the accident. He did not
see or know the source of his injury. Near him was
found a piece of iron piping, which, but a short time
before, had been seen on one of the upper floors near
the opening, into which it could have rolled and fallen
upon the plaintiff, and this was the theory upon which
the claim for damages was based. There, as in this case,
it was contended that the proximate cause of the acci-
dent was not sufficiently established. While not disputing
the soundness of the rule that to sustain a finding that
defendant's negligence was the proximate cause of the
injury the case must present something more than a
mere possibility or conjecture, this court said, "It is
equally well established that the cause of an accident
may be inferred from circumstances," and sustained a
verdict for the plaintiff. While plaintiff can not recover
upon a case which does no more than show a possibility
that the injury is chargeable to the defendant's negli-
gence, he is not bound to prove either the negligence or
the proximate cause beyond a reasonable doubt. Such
a rule would work an absolute denial of justice in a
great majority of cases. Proximate cause is, under all
ordinary circumstances, a question of fact; and, where
it depends upon circumstances from which different minds
might reasonably draw different conclusions, or where
all the known facts point to the negligence of the de-
fendant as the cause, the submission of the question to
the jury affords no ground for assignment of error by
such defendant. 29 Cyc. 632.

Proof of proximate cause is subject to no more bur-
densome rule than is applied to the proof of any other
essential fact in an ordinary law action. It must be es-
tablished by a preponderance of the evidence, direct or

circumstantial.   If there be shown any facts bearing
upon the question, and they afford room for fair-minded
men to conclude therefrom that one theory of the case
is better supported than the other, the question can not
be properly withdrawn from the jury.   *Schoepper v.
Chemical Co.*, 113 Mich. 582 (71 N. W. 1081); *Jucker
v. R. R. Co.*, 52 Wis. 150 (8 N. W. 862).   In our judg-
ment the record before us presents a case which would
justify a jury in finding that the wheel pit was not
properly guarded, that the opening left below the lower
rail was such as to expose the deceased to the danger of
slipping or falling from the cement path into the pit
and upon the wheel, and that the bruise upon the rail,
the rope pulled from the shive into the pit from the
east passageway, the blood spots, and the place where
the body was thrown, are facts from which the jury
could fairly find that he did thus fall, while attempting
to make his way along said path.   A cause being shown
which might produce an accident, and it further appear-
ing that an accident of that particular character did occur,
it is a warrantable inference, in the absence of showing
of other cause, that the one known was the operative
agency in bringing about such result.   *Brownfield v. R.
R. Co.*, 107 Iowa, 258; *Settle v. R. R. Co.*, 127 Mo. 336
(30 S. W. 125, 48 Am. St. Rep. 633).

The fact that a horse is found lying upon a railroad
right of way, in a wounded and mangled condition, jus-
tifies the inference that it was struck by a passing train.
A fire starting in the dry grass or underbrush near a
railway, immediately after a train has passed, will sup-
port a finding that it was kindled by sparks or cinders
from the locomotive.   In the *Settle* case above cited
proof that a handhold on the car, from which the de-
ceased fell, and to which he had been clinging, was bent
out of shape was held to be evidence that this imperfect
appliance was the cause of the fall.   If the plaintiff do

no more than to show a state of facts which is equally consistent with the theory of due care on the part of the defendant, then of course he must fail. *Neal v. R. R. Co.,* 129 Iowa, 5; *Huggard v. Refining Co.,* 132 Iowa, 736; *O'Conner v. R. R. Co.,* 129 Iowa, 636. But he is not bound to exclude the possibility that the accident might have happened in some other way, for that would be to require him to make his case beyond a reasonable doubt. He is only required to satisfy the jury, by a fair preponderance of the evidence, that the injury occurred in the manner he contends it did. *Woodall v. R. R. Co.,* 192 Mass. 308 (78 N. E. 446); *Stratton v. R. R. Co.,* 95 Ill. 25; *Schoepper v. Chemical Co.,* 113 Mich. 582 (71 N. W. 1081); *Tholen v. R. R. Co.,* 10 Misc. Rep. 283 (30 N. Y. Supp. 1081); *Drennen v. Smith,* 115 Ala. 396 (22 South. 442); *Whitney v. Clifford,* 57 Wis. 156 (14 N. W. 927); *Whitcher v. R. R.,* 70 N. H. 242 (46 Atl. 740); *Kerwin v. Collar Mills,* 28 Out. Rep. 73, affirmed in 25 Out. App. Rep. 36. The question is not what the trial court or this court would infer from a given state of facts, but whether the jury, as reasonable and intelligent men, might legitimately conclude from the proofs offered that the accident occurred in the manner alleged by the plaintiff. *Mumma v. R. R. Co.,* 73 N. J. Law, 653 (65 Atl. 210). The finding of the jury in this case that defendant was negligent as charged, and that such negligence was the proximate cause of the injury to the deceased, and that he did not contribute to such injury by his own want of care, is not without due support in the evidence, under the rules of law to which we have adverted, and the district court did not err in refusing to set it aside.

The judgment appealed from is therefore *affirmed.*