KENNEDY BUCHANAN, Appellee, v. HURD CREAMERY COMPANY, Appellant.

No. 41590.

DECEMBER 13, 1932.

Kimball, Peterson, Smith & Peterson, for appellant.

Robertson & Robertson, for appellee.

WAGNER, J.—The appellant's sole complaints are (1) that the court erred in overruling its motion for a directed verdict, which was made at the close of plaintiff's evidence and renewed at the close of all of the evidence, and (2) that the court erred in the giving of one of the instructions.

In the consideration of the first question, it will be necessary to refer somewhat in detail to the facts as disclosed by the evidence. At the time of the accident, on April 18, 1931, a truck owned by the defendant-corporation and operated by one of its employees was traveling south on South Avenue, where the accident occurred. The plaintiff and his wife, in a one-seated top buggy, proceeded from their home upon a diagonal road which leads into South Avenue, which is paved. They then traveled on South Avenue in a northerly direction toward the city of Council Bluffs. South Avenue is also known in the record as Highway Number 34. One of the horses was twenty years old and the other fifteen. South Avenue and the road running past the home of the plaintiff are much traveled and for a number of years the plaintiff has used this team from one to three or four times a week in driving back and forth upon said highway from his home to the city of Council Bluffs. The evidence discloses that this highway is used by automobiles about as much as the ordinary city street. This highway cuts the little farm owned by the plaintiff, upon which the horses for a number of years have been used, into two pieces. The uncontradicted evidence discloses that the team was gentle and entirely familiar with, and not afraid of, automobiles or trucks.

After reaching South Avenue, the plaintiff traveled in a northerly direction across a bridge on Mosquito Creek and then continued in the same direction, crossing the tracks of both the Chicago, Milwaukee & St. Paul Railroad Company and the Chicago, Rock Island & Pacific Railroad Company. The distance from the track of the latter Railroad Company to a curve in the road to the northwest, which leads into what is known in the record as Twenty-ninth Avenue is 1221½ feet.

The plaintiff testified:

"After we crossed the tracks [of the Railroad Companies] the horses were walking. I never drove them any other way only in a walk. One of the horses was on the pavement and the other was on the side of the road, on the dirt shoulder upon the right-hand side.

After we had crossed the tracks there was no vehicle of any kind or description in front of me or behind me. I saw a truck coming when it came around the bend or curve on South Avenue there about 29th Avenue. When I saw the truck come around the bend we had traveled about 110 yards north of the Rock Island track. When I first saw the truck it appeared to be a new truck and had a fresh cover on it. It was a canvas cover. I observed not so much the truck as the noise it made. Sounded just like a man who knew how to handle a horse whip was popping it off as fast as he could, a sharp popping noise. It was, my best judgment, it was as loud as a rifle shot. I heard the noise before I saw the truck,—that is, I could see the top of the truck, the white cover, just before, up across 29th Avenue, just a short distance around the bend, I could see the top but not the truck. When it came around the bend it came toward me. I could see it was not a large truck, but apparently a new truck, and of course it was wider on each side of the driver's cab, and the cover was tight. I am only speaking for one side of it, the side that I saw, the front end of the cover was tight, but ties slack, so that the wind got in under it and it billowed up and down just like water does in a wind. There was a stiff wind blowing that morning and this truck was driving right into it. When the truck came around the curve and came toward us one of the horses was so terrified that he was almost immovable, and the other horse was the other way,—he wanted to get away from there. He threw his head over his mate. The one tried to push the other away to the right,— that would be away from the truck,—and when it got right close to us they went into the ditch. From the· time it [the truck] came around the corner until I went into the ditch there was nothing between the truck and myself to obstruct my view, no other conveyance between us. There was not much time or space for action; only the one horse was right up in the air, as I told you,—he was bound to get away from there. He did not care where he went until he went into the ditch. They [the horses] were more than frightened, they were terrified. Q. State whether or not they [the horses] threw their heads into the air. A. They did."

On cross-examination, the witness testified:

"After I noticed the horses looking for something I heard the truck before I saw it. It sounded like a sharp clear crack. At that time it was in sight,—the top of it was in sight,—that is, the low

top that covers the body of the truck. The first that I saw of the truck as it came around the corner was the body of the truck and the cab. Next, I saw this cover billowing up and down in the wind. I saw a dozen feet of the canvas, practically the whole length of the truck, so that it hung behind the truck a little. I could see it hang down and see it stick out from the truck. As the truck was coming toward me, I want to tell the jury that I could see the canvas sticking out to the rear of the truck. I could see the canvas behind the cab. The box was, I suppose, as wide as they make them, seven feet, and it extended about a foot beyond the cab on either side, I think. At the time when I first noticed they [the horses] were acting a little scary until after the accident. I sure was watching the team as close as a man could."

On redirect examination, the plaintiff testified:

"I heard this noise and looked and as that is all higher ground than where this truck crosses the end of 29th Avenue, and come around the bend, and that is when I saw the top of the truck. There were no automobiles back of me that I could see. I did not see anything coming toward me except the truck. I did not see any objects anywhere other than this truck. There was no other moving object other than this truck in the highway in sight."

The witness testified that about 110 steps north of the Rock Island track the horses went into the ditch, broke the buggy tongue from the buggy, upset the buggy, throwing it onto the fence and throwing him clear over the fence into the field. The team broke loose from the buggy and ran down the highway in a southerly direction. The truck approached from the north. This testimony is also corroborated by other witnesses, who testified in behalf of the plaintiff.

The witness Belthius testified in behalf of the plaintiff, that the truck had a canvas over the rack part of the body of the cab, which was blowing like a bellows; that it seemed like a bellows flapping.

The witness Nelson testified that he was traveling behind the truck as it proceeded south toward the place of the accident and that:

"The canvas was a covering over the top tied on both sides in front, on the left—loose on the left side, so he could throw it back

and get the cans out. The air underneath driving through the front up through the canvas made air come underneath, and it would go flap, flap against the side of the rack, and that on the near side of the horses, and that was true on the left side of the truck as we were going toward the D. and D. [in the direction of the place of the accident]. I should judge this canvas was flopping out to the side of the truck three or four feet. It made a noise like two leather straps slapping together. It kept flapping as it went along. There was a strong wind that morning. It [the canvas] continued to flap all the time until the truck stopped."

The witness Nelson further testified as to his going to the assistance of the plaintiff, and that he saw the horses get out of the hole on the side of the road and hit for the pavement. "It went so quick, lightning could not be quicker."

The witness Beldin testified that he was at a garage some distance north of the place of the accident when the truck went by, and "My attention was attracted by the canvas, by the loud cracking of the canvas in the wind. I was outside of the garage putting gas in the gasoline tank. The first thing, when I was putting gas in the gasoline tank, we heard this loud cracking as the truck was coming to the garage, and we walked out to see what the noise was. We saw this truck coming and the canvas popping in the air, cracking loud, you could hear it, oh, I expect a block or two blocks, plenty loud, it was very easy to hear it, we stood and watched the truck to see what the noise was. The canvas was tied at the front end of the edge or corner of the box, and the back end of it was loose, flopping in the air, to the rear or to the left side."

A number of other witnesses gave similar testimony relative to the flapping or "billowing" of the canvas attached to the truck and the unusual noise in connection with the flapping.

We deem the foregoing a sufficient statement of the evidence for the determination of the questions presented. The appellant asserts that the trial court erred in overruling its motion for a directed verdict, because the record fails to reveal any actionable negligence by said appellant or its employee. We need consider only one ground of negligence alleged in the petition, as all other grounds were withdrawn from the consideration of the jury. The ground of negligence not withdrawn from the consideration of the jury is as follows:

"That defendant was guilty of negligence in the operation of its truck at said time and place in the following particulars, to wit: For that said defendant and said employee of defendant at said time and place was operating said Ford truck with a white canvas top over the body thereof and the four corners of said canvas top were loose and as said truck proceeded in a southerly direction at and just prior to the point of said accident, the four corners of said canvas top were permitted to fly loose and flap in the breeze and in doing so caused a loud noise which frightened said team of horses and resulted in the accident and injuries to plaintiff. That ordinary care on the part of the defendant required that said canvas top be securely fastened to said Ford truck."

The question at this point is, Does the evidence tending to establish the claims of the appellee in this respect constitute actionable negligence? It will be noted that there is no claim by the appellee of the violation by the appellant of any statute, nor is it necessary for the appellee to prove a violation of a statute in order to show negligence on the part of the appellant. The conduct of one using the highway may constitute negligence, even though there has not been a violation of any statute. See Turner v. Bennett, 161 Iowa 379. It is also true that the rights of a driver of a horse or team attached to a buggy or carriage are not superior to the rights of the driver of an automobile or truck. Each has a right to go upon and use the public highway, but each is restricted in the exercise of his rights by the corresponding rights of the other, and each is entitled to regulate his use of the public highway by observance of ordinary prudence under all circumstances. See House v. Cramer, 134 Iowa 374; Turner v. Bennett, 161 Iowa 379; Tyler v. Hoover (Neb.), 138 N. W. 128. In House v. Cramer, 134 Iowa 374, we declared:

"The owners thereof (owners of motor vehicle) have the same rights in the roads and streets as the drivers of horses or those riding a bicycle or traveling by some other vehicle. But they are to use this means of locomotion with due regard for the rights of others having occasion to travel on the highways."

It is also true, that the mere fact that an accident occurred, resulting in injury to the appellee, is not of itself sufficient to justify a finding by a jury of negligence on the part of the appellant. Negligence at common law is the doing of something which an ordinarily

careful and prudent person, under the same circumstances, would not do, or the failure to do something which an ordinarily careful and prudent person, under the same circumstances, would do. The care exercised by an ordinarily careful and prudent person is in proportion to the apparent danger involved. See Cox v. Des Moines Electric Light Company, 209 Iowa 931; Cresswell v. Wainwright, 154 Iowa 167. In the latter case, we declared:

"It could be only the failure of defendant to do something which, *under the circumstances as they appeared to him, or should have appeared to him, as a reasonable man,* he ought to have done, or the doing of something which, *under such circumstances,* a reasonable man in the exercise of proper care for plaintiff's safety ought not to have done, and which could be found by the jury to have resulted in the injury to plaintiff, that would justify a verdict against him." (Writers' italics.)

It must be conceded that the mere operation of an automobile upon the highway in the usual, ordinary and customary way is not negligence. But we have held that, if the operator of an automobile discovers that a team is frightened at the automobile and beyond, or about to get beyond control of the driver, the question of his negligence in failing to stop the automobile in order to avoid injury to the plaintiff, under such circumstances, is a question for the jury. See Raber v. Hinds, 133 Iowa 312. One of the grounds of negligence in the petition, based upon the failure of the operator of the truck to stop or slow down after seeing that plaintiff's horses were frightened, was by the court withdrawn from the consideration of the jury. The plaintiff has not appealed. Therefore, this ground of negligence is not before us for our determination. The sole question at this point is, Does the evidence tending to establish the aforesaid ground of negligence hereinbefore quoted constitute actionable negligence? The operation on the highway of a motor vehicle whose appearance is unusual or the character of whose load is such that it might reasonably be expected to frighten an ordinary horse, and the making or permitting of unusual or unnecessary noises while the motor vehicle is being operated in the vicinity of horses, which might reasonably be expected to frighten an ordinary horse, is sufficient to justify a finding by the jury that the operator of the motor vehicle was negligent and to impose liability for resultant injury. See La Brash v. Wall (Minn.), 158 N. W. 723;

Pease v. Cochran, 5 A. L. R. (S. D.) 936; Cutter v. City of Des Moines, 137 Iowa 643; 42 C. J. 1066-1067; 13 R. C. L. 254-255. In La Brash v. Wall (Minn.), 158 N. W. 723, the court, in passing upon this question, said:

"The plaintiff was going south on a street in Minneapolis with a wagonload of household furniture. The auto van of the defendant came from the east on an intersecting street and turned towards the plaintiff from the south and at first was on the westerly side of the street on which the plaintiff was driving. The auto van had curtains which were flapping and making some noise. The plaintiff's team became frightened and ran away and the plaintiff's furniture was damaged. The evidence was sufficient to justify a finding of negligence."

In Pease v. Cochran (S. D.), 5 A. L. R. 936, the court made the following pronouncement on this question:

"In order to constitute actionable negligence on this branch of the case, there must have been something about the appearance of the car or the manner in which it was loaded that would suggest to an ordinarily prudent man that it would terrify or frighten an ordinary horse; i. e., a horse that had become accustomed to automobiles on the road. There are horses that would take fright at any automobile, regardless of whether it was loaded at all; but people are not required to refrain from using automobiles on the highway to avoid frightening such horses, and a person taking such horse on the highway would do so at his own peril. On the other hand, there are horses that would not take fright at an automobile, no matter how it might be loaded or what its appearance might be. *But this fact would not justify a person in going upon a highway with an automobile so loaded, or having such an appearance, that it would be calculated to frighten or terrify an ordinary horse.*" (Writer's italics.)

In 42 C. J., 1066-1067, the author expresses the thought in the following language:

"* * * to operate on the highway a motor vehicle whose appearance, or the character of whose load, is such that it might reasonably be expected to frighten an ordinary horse, may amount to negligence and impose liability for any resulting injury. * * * The making of unusual or unnecessary noises while operating a

motor vehicle in the vicinity of horses, causing them to become frightened and resulting in injury, may of itself constitute negligence."

In Cutter v. City of Des Moines, 137 Iowa 643, the question was whether the alleged negligence of the defendant-city was a question for the jury. The court, in passing upon this question, declared:

"On the 11th day of February, 1903, a man while on his way into the city with a bobsled broke the singletrees while trying to pass over this grade and left the sled with the box thereon, standing on top of the grade and about four feet from the side or edge thereof. On the 21st day of February, plaintiff and his wife were coming into the city over Beaver avenue in a single buggy leading a horse behind. Plaintiff was driving, and as they approached the bobsled, and at a point where the fill or grade was about five feet in height, the horse which plaintiff was driving took fright at the sled, gave a quick jump, and tipped the plaintiff and his wife out of the buggy and down the side of the embankment, severely injuring both. Sometime between the date when the sled was left upon the grade, and the day upon which plaintiff was injured, some one had removed the box from the runners and had pushed it over partially into the weeds, *giving the sled an unusual and unnatural appearance.* \* \* \* The gist of the argument for a reversal is that, as to objects in a street causing horses to frighten, the rule is that, before the city can be charged with liability, the object must be of an unusual and extraordinary character, and such as might reasonably be expected to cause fright. \* \* \* It may be that, as to the frightening of horses, the object must be such an one as is calculated to produce such fright; but, if that be the rule, even an ordinary wagon may be so changed in posture or appearance as to cause fright. It is well known that horses are quick to observe an unnatural position of the most common objects. A wagon box partly removed from a wagon is well calculated to frighten a horse, although if the wagon box were in place he would take no notice of it. According to the evidence in the case, we think that the bobsled, in the condition in which it was in, was both an obstruction to the street and a nuisance, *and that a jury might well have found that it was calculated to frighten ordinarily gentle horses.*" (Writers' italics.)

In view of the appearance of the automobile with the canvas "billowing and flapping," the unusual noise caused thereby, as

shown by the evidence, which noise sounded like a rifle shot, or like two leather straps slapping together, and could be heard, as testified to by some of the witnesses, for a distance of two blocks, it was a question for the jury as to whether these conditions were such as would suggest to an ordinarily careful and prudent person that they would terrify or frighten an ordinary horse. The court did not err in holding that the question of appellant's negligence was for the jury.

But the appellant asserts that it is not shown by the evidence that said negligence is the proximate cause of the fright of the horses and of plaintiff's injury. It is quite clear that plaintiff's injury is due to the fright of the horses. The question at this point is, Is the evidence sufficient to warrant a finding by the jury that the unusual appearance of the truck or the unusual and unnecessary noise was the proximate cause of the fright of the horses? We answer in the affirmative. It is true that there must be a causal connection between the negligence charged and the resulting injury. By "proximate cause" is meant the moving or producing cause. Negligence is the proximate cause of an injury which follows such negligent act, if it can be fairly said that in the absence of such negligence the injury or damage complained of would not have occurred. The appellant argues that there is nothing in the record that excludes the possibility that the team became frightened from other causes; that the fright of the team might have been some animal or object along the side of the road which escaped plaintiff's attention. It is sufficient to say that there is not a scintilla of evidence in the record to show that there was anything along the side of the road that would have a tendency to frighten a horse—there is nothing in the evidence to sustain appellant's speculative and conjectural theories. That the question of proximate cause, under the record in this case, was for the jury, see Cresswell v. Wainwright, 154 Iowa 167; Lehman v. Minneapolis & St. Louis Railroad Company, 153 Iowa 118; Swaim v. Chicago, Rock Island & Pacific Railway Company, 187 Iowa 466; George v. Iowa & Southwestern Railway Company, 183 Iowa 994; Woodard v. Chicago, Rock Island & Pacific Railway Company, 193 Iowa 516; Brownfield v. Chicago, Rock Island & Pacific Railway Company, 107 Iowa 254; Cutter v. City of Des Moines, 137 Iowa 643; Sergeant v. Challis, 213 Iowa 57; Bell v. Brown, 214 Iowa 370; Lunde v. Cudahy Packing Co., 139 Iowa 688.

In Brownfield v. Chicago, Rock Island & Pacific Railway Company, 107 Iowa 254, we said:

"When a cause is shown which might produce an accident in a certain way, and an accident happens in that manner, it is a warrantable presumption, in the absence of showing of other cause, that the one known was the operative agency in bringing about the result."

In Woodard v. Chicago, Rock Island & Pacific Railway Company, 193 Iowa 516, we said:

"The rule is well settled in this state that plaintiff cannot recover where the facts go no further than to establish a possibility that defendant's negligence was the proximate cause of the injury. A causal connection must be shown. * * * (Citing cases.) But it is not incumbent upon the plaintiff to prove either the negligence or proximate cause beyond a reasonable doubt. Lunde v. Cudahy Pkg. Co., 139 Iowa 688. When facts are proven which show a cause which might produce an accident in a particular way, and an accident happens in that manner, it is a warrantable presumption, in the absence of some showing to the contrary, that the known cause was the one that produced the result."

In Lunde v. Cudahy Packing Co., 139 Iowa 688, at 700, we made the following pronouncement:

"While plaintiff can not recover upon a case which does no more than show a possibility that the injury is chargeable to the defendant's negligence, he is not bound to prove either the negligence or the proximate cause beyond a reasonable doubt. Such a rule would work an absolute denial of justice in a great majority of cases. Proximate cause is, under all ordinary circumstances, a question of fact; and, where it depends upon circumstances from which different minds might reasonably draw different conclusions, or where all the known facts point to the negligence of the defendant as the cause, the submission of the question to the jury affords no ground for assignment of error by such defendant."

In George v. Iowa & Southwestern Railway Company, 183 Iowa 994, we said:

"In establishing that injury is due to negligence either by direct or circumstantial evidence, the plaintiff need not negative every

other conceivable hypothesis which might account for the injury. It is only where opposing theories of the accident are equally in accord with the proven facts that the evidence of the plaintiff fails, as matter of law. Gordon v. Chicago, R. I. & P. R. Co., 146 Iowa 588. An efficient and adequate cause of an injury may be termed the real or proximate cause thereof, unless another cause, not incidental to such cause but independent of it, has intervened and caused the injury."

In Sergeant v. Challis, 213 Iowa 57, at 62, we declared:

"Ordinarily, the question of proximate cause is for the jury. Cresswell v. Wainwright, 154 Iowa 167. The rule as to whether negligence, claimed to be the proximate cause of a collision and resultant injury, is a question which should be submitted to the jury is the same as applies to the determination of any other question of fact involved in the case. In other words, if reasonable minds, having before them all of the facts upon the question, could reach but one conclusion, the question then becomes one of law for the court, but if, under the proven or admitted facts, different minds might reasonably reach different conclusions, the question is then one of fact for the determination of the jury. Dreier v. McDermott, 157 Iowa 726; Barnhart v. Chicago, Milwaukee & St. Paul Railway Company, 97 Iowa 654; Smith v. City of Hamburg, 212 Iowa 1022."

In view of our pronouncements upon this question, from which quotations are made, and in view of the evidence thereon as disclosed by the record hereinbefore set out, it is quite clear that the court did not err in submitting the question of proximate cause to the jury.

One other matter demands our attention. The court, in submitting the question of the alleged negligence to the jury, submitted both the question of the unusual appearance of the truck covered by the flapping canvas and the unusual noise emanating therefrom. It is the contention of the appellant that the pleaded ground of negligence related only to the noise, and that for said reason the court submitted to the jury for its consideration an act of negligence not pleaded by the appellee. It is true that the court did not use the exact language of the pleaded allegation, but paraphrased it in his own language. It is not necessary that the court use the exact language of the pleaded allegation. See Rulison v. Victor X-Ray Cor-

poration, 207 Iowa 895. Were the words "all of" inserted between the words "noise" and "which" in the foregoing quoted ground of negligence, the appellant could not have any objection to the instruction given by the court. It will be noted that the last sentence of said quoted ground of negligence is: "That ordinary care on the part of the defendant required that said canvas top be securely fastened to said Ford Truck." A fair construction of the pleading, including the last sentence, is that the appellee was relying upon both the unusual appearance of the truck covered by the billowing and flapping canvas and the unusual noise emanating therefrom. This is the construction placed thereon by the trial court. There is evidence to establish both the unusual appearance of the truck covered by the billowing and flapping canvas and the unusual noise emanating therefrom. It is apparent that the case was tried upon the theory adopted by the court in the giving of said instruction. The giving of said instruction by the trial court was not prejudicial to the appellant. See 'Shilling v. Sioux City Gas & Electric Company, 184 Iowa 1153.

We have considered all of the propositions urged by the appellant for reversal. We find no prejudicial error, and the judgment of the trial court is hereby affirmed.—Affirmed.

STEVENS, C. J., and FAVILLE, DE GRAFF, and ALBERT, JJ., concur.