PAUL S. WALTERICK, Appellee, v. J. E. HAMILTON, Appellant.

NEGLIGENCE: Acts Constituting—Violation of Automobile
1 Statutes. A verdict against the operator of an automobile is justified on a showing that the machine was operated (a) at a speed in excess of that permitted by a city ordinance, or (b) on the left-hand side of the street, or (c) without passing to

the right of, and beyond, the center of the street when turning to the left, with resulting injury to another rightfully in the street and free from contributory negligence. Section 1571-m18. Code Supplement, 1913.

**NEGLIGENCE:** Contributory Negligence—Emergencies. Principle
2  recognized that one is not necessarily guilty of contributory negligence because, in an emergency, he chooses the more dangerous of two ways in which to escape injury.

**NEW TRIAL:** Newly Discovered Evidence—Noncumulative Evi-
3  dence. Evidence that, several days after an accident, an injured party stated that, "if I had been looking where I was going, this would not have happened," is not cumulative to like statements made at the time of the accident, when the injured party was so dazed that he was not responsible for what he then said.

**NEW TRIAL:** Newly Discovered Evidence—Nonprobability of
4  Different Result—Discretion. The judgment of the trial court that a different result on retrial would not be probable, even in view of newly discovered evidence, will not ordinarily be interfered with.

**TRIAL:** Conduct of Jury—Prompt Rebuke of Improper Argument—
5  New Trial. A new trial will not be granted for improper argument indulged in by a juror, when such argument was promptly rebuked by the foreman and was thereafter evidently disregarded, especially when the verdict was not excessive.

*Appeal from Madison District Court.*—W. H. FAHEY and J. H. APPLEGATE, Judges.

MONDAY, MARCH 12, 1917.

ACTION for damages resulted in judgment for plaintiff, and thereafter, a petition for new trial was dismissed. The defendant appeals.—*Affirmed*.

*A. W. & Phil R. Wilkinson* and *W. S. Cooper*, for appellant.

*Sam C. Smith* and *Jno. A. Guiher*, for appellee.

LADD, J.—I.  Jefferson Street is imme-
diately north of the public square in Win-
terset, extending east and west.  It is paved
to North Second Avenue, a block west of
the square, 42 feet wide between the curb lines.  The trav-
eled way to the south on North Second Avenue was 28 feet
between the curb lines, and to the north, 24 feet, but this
street was not paved.  At about 6 o'clock P. M., plaintiff
started for a picnic in the east part of the city, riding a bi-
cycle, and was going in an easterly direction along Jeffer-
son Street when his vehicle collided with defendant's auto-
mobile, resulting in the injuries complained of.  The grounds
of negligence alleged are: (1) That defendant was operat-
ing his car at an unlawful speed; (2) was not driving on the
right-hand side of the street or as near the curb as the con-
dition of the street permitted; and (3) attempted to turn to
the left into North Second Avenue without passing to the
right of and beyond the center of said street before so turn-
ing.  The first error assigned is that the verdict is not sus-
tained by the evidence, for that (1) negligence of the de-
fendant was not shown to have been the proximate cause of
plaintiff's injuries, and (2) negligence on the part of plain-
tiff contributed to such injuries.  An ordinance of Winter-
set prohibited the operation of an automobile at a rate of
speed exceeding six miles an hour.  The evidence was all
but conclusive that the speed of the car exceeded this rate;
that, in meeting plaintiff, the automobile kept near the
center of the street until near the intersection, when it
turned to the left, instead of the right, as required by Para-
graph 1 of Section 1571-m18 of the Code Supplement, 1913,
declaring that:

"The operator of a motor vehicle shall turn to the right
when meeting another vehicle and in cities and towns shall
at all times travel on the right-hand side of the street, as
near the curb as the condition of the street will permit."

1. NEGLIGENCE:
acts constitu-
ing: violation
of automobile
statutes.

Nor did defendant pass to the right and beyond the center of North Second Avenue before turning, as exacted by Paragraph 4 of the same statute, directing that:

"The operator of a motor vehicle, * * * in turning to the left from one street or highway into another, shall pass to the right of and beyond the center before turning." ·

Negligence in all three respects was shown, and, as we think, the collision might have been found to have been in consequence of any one of them, and therefore that such negligence was the proximate cause of plaintiff's injuries. The plaintiff testified:

"Was not looking north as I came down Jefferson Street until I got to the corner to see if traffic was clear. Mr. Hamilton was about in front of the telephone office or near it when I first saw him. I was about in front of first house west of the corner. Was riding in the center of the street. Mr. Hamilton was in the center of the street. I did not see he was turning south until I was about 20 · feet from him and I turned to the right. I was going east and he west; about halfway between center and curb on south side of street when he was turning south. Was just crossing where Second Avenue would go into Jefferson Street. When I saw he was turning south, I kept on going towards the curb on the south side of the street. The street and sidewalk were clear. North half of Jefferson Street was clear. Q. What did you do? A. Kept going on over to the right where I should. Q. You kept on turning to the right? A. Yes, sir. Q. That is, you turned in towards the south side of the street just the same as Mr. Hamilton was turning? A. Yes, sir. Q. Now then, if you had gone on straight east you would have escaped him—would not have met him at all? A. Probably would have, for I would have been right in his course then; I had no right to be there. Q. You had no right over on the north side of the street? A. No, sir. I probably had a legal

right, but it was not proper to be there, in custom. ᐧ * * *
Mr. Hamilton was southward bound when I hit him, in
southwest slant. * * * After Mr. Hamilton turned
south, he was still on the angle moving south. I thought
I surely could get around him. I did not imagine he would
go over against the curb."

Mrs. Stanfield testified that both vehicles were near the
middle of the street when she first saw them, and that both
had turned towards the south when the ·collision occurred.
Smith swore that, immediately after the collision, he saw
plaintiff getting up at a point about 22 feet east of the
corner. Anna Violet located him at the same place. Jack-
son testified that the "bicycle was coming from the west.
Automobile started up the street west, and at the cor-
ner the boy took the south side, and the auto, in place of go-
ing around him, went in towards him and struck bicycle at
the corner of the street;" that "the man on the bicycle, as
he came down the street, was about at the middle of it,"
and that when defendant was turning to the south, the acci-
dent happened. On the other hand, the defendant testified:

"I had got just about out in the center of the street,
possibly just a little north of the center, and went west until
I came almost to the turn and started to turn south. Plain-
tiff was coming along up not far from the lumber yard. I
was running about 7 or 8 miles an hour. I was running in
low in a Ford; had not shifted. Plaintiff was coming fast
until he looked up and saw me, and then shot across pretty
rapidly, I thought. When I first saw him he was north of
me quite a ways, west of me on north side of the street. He
was looking towards the north about the time he got to the
crossing. I noticed he looked north until he looked up and
happened to see me, and then he shot across to the south
side of the street. When he looked up and saw me, I was
about to the corner of the street just ready to turn south—
was turning south a little. He shot across the street to the

south side of the street and the automobile and bicycle came together. * * * I think we were just about at the east side of Second Street, right at the corner. There was nothing to hinder Walterick going right straight down the street north of me. * * * Was not running 15 miles an hour. * * * There was nothing to interfere with me going in the center of the street or the north side of Jefferson Street, and the north side was absolutely clear. The reason I did not go to the north side of Jefferson Street was because, when I got into the center of the street from where my car was standing, I was ready to turn south. I did not attempt, when I turned, to go to the north side of Jefferson Street and turn south so as to bring me west of the center of Jefferson Street and Second Avenue. * * * I turned south before Walterick did. When I turned south, he was pretty well to the north of the street west of me, and I was turning south on Second Avenue. I was heading for the traveled track about the center of the street. The track is about 20 feet wide. I was 10 or 12 feet from the curb and southeast intersection. * * * When we struck, I was turning south a little south of the center."

Haymond testified that plaintiff "was going from the west more on the north side of the street on his bicycle, considerably faster than Mr. Hamilton—10 or 15 miles an hour. When I first saw him, he was looking towards the north, and was about 10 feet west of the west side of street intersection. Just as Mr. Hamilton was getting ready to turn south, Walterick ran into him with the bicycle." He swore that Walterick was looking north until the time of the collision. Mrs. Hann testified that plaintiff was riding on the north side of the street. From this evidence, the jury might have found that the automobile was moving at a speed of considerably more than 6 miles an hour, and if so, that, but for such excessive speed, plaintiff might have passed the car to the right without colliding, and that this

would have happened had he kept his car to the right of the center of Jefferson Street near the curb, or passed to the right of the center of North Second Avenue before turning to the left. Defendant's negligence in any of these respects, then, might have been found to have been the proximate cause of the injuries suffered.

**2. NEGLIGENCE:** contributory negligence: emergencies.
Nor does the evidence leave any doubt that the issue as to contributory negligence was rightly submitted to the jury. According to plaintiff's testimony, he was within 20 feet of the car when he noticed it begin turning to the south. He was suddenly called upon to act, and to act quickly. That he may have made a mistake in choosing the safest way to pursue did not necessarily condemn him as guilty of contributory negligence. The outcome depended largely on the course likely to be pursued by defendant. Would he persist in ignoring the law of the road, upon seeing another vehicle turning to the right, as it should, or bring his own car to the right side of the street where it should be? The plaintiff could not know, and could judge only from appearances. Again, in view of the speed of the vehicles, might plaintiff escape injury by passing to the right, notwithstanding defendant's course? He was not bound to turn to the left or keep on directly to the east in preference to what he did, except in the event that this seemed to him, acting as an ordinarily prudent person would act under like circumstances, the safer way to proceed. We are of opinion that whether he was negligent in turning to the right, in view of the situation confronting him, was rightly submitted to the jury.

**3. NEW TRIAL:** newly discovered evidence: noncumulative evidence.
II. Some time after the entry of judgment, defendant filed a petition for new trial, on the ground of newly discovered evidence, and because of the irregularity in the proceedings of the jury. One witness testi-

fied that, some days after the accident, he heard plaintiff say that, "If I had been looking where I was going, this would not have happened." Testimony of a like statement's having been made immediately after the accident was adduced at the trial; but plaintiff had sworn in substance that he was not aware of having made such a statement, and that he "was very much dazed at the time." The jury, then, might have concluded that he was not responsible for what he then said, and therefore the newly discovered evidence cannot be held to be merely cumulative. *Wayt v. B. C. R. & M. R. Co.*, 45 Iowa 217. But the plaintiff denied having

made the statement to Witt, and, in view of the record as set out, we are not inclined to say that the court abused its discretion in ruling that, with the additional evidence, a different result would not be reasonably probable. *Rockwell v. Ketchum*, 149 Iowa 507.

4. NEW TRIAL: newly discovered evidence: nonprobability of different result: discretion.

The alleged irregularity of the jury complained of is that there was discussion, while deliberating on their verdict, about making an example of defendant, inasmuch as there had been much careless auto driving, and he had means and the plaintiff was without these. Undoubtedly, such a remark was made, but the foreman of the jury promptly declared that this could not be thought of, and that the case should be decided right, regardless of the wealth of the one or the poverty of the other. The jurors agree in their testimony that they gave these suggestions no consideration, and some of them say they heard no such talk; and the amount of the verdict, which was not excessive, bears out their assertions that these matters were not taken into account. We are content with the ruling of the trial court on the petition for new trial.—*Affirmed*.

5. TRIAL: conduct of jury: prompt rebuke of improper argument: new trial.

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.