LILLIE BAILEY, Appellee, v. CITY OF LEMARS, Appellant.

MUNICIPAL CORPORATIONS: Negligence—Depression in Walk.
1   The maintenance in a sidewalk of a depression with ragged and dilapidated edges, even though the depression is of slight depth,—some two inches,—may present a jury question on the issue of negligence.

NEW TRIAL: Newly Discovered Evidence—Failure to Investi-
2   gate Known Facts. Diligence in the matter of newly discovered evidence as ground for new trial demands that a party proffering the new evidence follow up and investigate during the trial suggested facts brought to light during the trial.

TRIAL: View of Premises. The court is within its discretion in
3   refusing to permit the jury to view the scene of an accident at a trial over two years after the accident, and at a time when the condition of the walk had materially changed.

NEGLIGENCE: Defining Reasonable Condition. The court need
4   not "define the condition in which a walk must be in order to be in a reasonably safe condition," especially in the absence of a request.

NEGLIGENCE: Evidence—Condition After Injury. Evidence of
5   physicians reviewed, as to the physical condition of an injured party as late as two years after an injury, and held properly received, over the objection that it was too remote.

*Appeal from Plymouth District Court.*—WILLIAM
HUTCHINSON, Judge.

OCTOBER 2, 1920.

ACTION to recover damages for injuries alleged to have been caused by a defective sidewalk. Trial to a jury, and verdict and judgment for plaintiff. Defendant appeals.— *Affirmed.*

*Nelson Miller,* for appellant.

*Roseberry & Roseberry,* for appellee.

PRESTON, J.—1. Plaintiff claims to have caught the heel of her shoe on the jagged and overhanging edge of a defect in a cement sidewalk, as she was walking south, after dark. Her evidence tends to show that she was violently thrown forward to the pavement, which caused a miscarriage, and injuries to her limb, arm, side, pelvis, and the reproductive organs. In addition to the general verdict, the jury returned answers to interrogatories, which we understand to have been submitted by the defendant, as follows:

"1. Was the city negligent because of the existence of the break in the sidewalk involved in this case? Answer. Yes.

"2. How much higher, if any, was the edge of the walk south of the break than the edge of the walk north of the break? Answer. One inch.

"3. What was the depth of the break below that portion of the walk which lay north of the break? Answer. One and three-fourths inches."

The issues, as stated by appellant, and adopted by appellee, were whether the defect in the walk was of such a character that it could be said to be negligence in the city to permit it to exist; whether the accident actually happened; and whether the walk was in a reasonably safe condition. As to whether the injury occurred, we think there is no dispute in plaintiff's evidence, and we understand appellant to so concede, in connection with their

1. MUNICIPAL CORPORA-TIONS: negligence: depression in walk.

argument as to whether the motion for a new trial should
have been granted on the ground of newly discovered evi-
dence, which will be referred to later.   As to the other two
propositions, appellee contends that it was a question for
the jury as to whether the defect in the walk constituted
negligence, and whether it was in a reasonably safe con-
dition; while appellant contends that, as a matter of law,
the walk was in a reasonably safe condition, and that there
was no negligence.   We insert here a photograph, which
was introduced in evidence.

The evidence of the photographer does not show the
position of his instrument, but it seems to be conceded in
argument that the view in the photograph is looking south,
the direction in which plaintiff was walking.   She was
walking on the inside of the walk: that is, the side towards
the buildings.   The photograph was taken in March, 1917,
about three months after the injury, which was on Decem-
ber 23, 1916.   According to the evidence, the walk was

covered with snow, a part of the time during the winter, and it is not claimed there was any material change in the walk in that time, although it appears that there was a change, and that the depression was deeper, when some of the measurements were made by defendant, some, a year, and some, two years, after the accident. The trial was had in 1919. It is not seriously disputed, if, indeed, there is any dispute in the evidence, that the south edge of the break, the edge against which plaintiff caught her foot, is higher than the north edge, and that the south edge was the broken edge of the break, and had been raised up above the original level of the walk. The evidence tends to show that the cement under the top hard surface had rotted away back under the edge. It is thought by appellant that the special findings of the jury are not sustained by the evidence. We think they are. True, there is a conflict in regard to this between the witnesses for plaintiff and those for defendant. Plaintiff testifies that, after she fell, she lay there a few minutes; that it knocked the breath out of her, and made her feel faint; that, while she was down on the walk, she put her hand down and felt the walk, and estimates the depth at 3½ inches, by the measurement of her finger; that she didn't feel the bottom; that it went kind of under; that she simply reached over, to see what caused the fall; that she never saw the broken place in the walk. There is evidence that there is a tree, practically opposite the hole, and an electric light in the center of the street intersection, and that these caused a shadow across the defective walk. A witness who was a carpenter, and testifying for plaintiff, says he measured the defect in the walk in March, 1917; that, at that time, the narrowest place was 6 inches wide, and the widest, 14 inches; that the shallowest place was 1 inch deep, and the deepest, 2 inches, and that the walk is 1 inch higher on the south side than on the north; that the hole was deepest in the center, and sloped gradually to the sides. Other witnesses give their estimates of the depth, some from observation, and some from measure-

ments, but at different times. There is evidence tending to show that there was sand and debris in the hole, which would somewhat affect the measurements, and that it would depend somewhat on the precise place where the measurement was made, since it was not the same clear across. Some of the witnesses, however, say that there was no debris in the hole. There is evidence that the south edge of the break was rough and jagged, with projections of about three fourths of an inch. Plaintiff testifies that it was her heel that caught, and not her toe; that she caught her foot under the broken walk; that "my heel didn't break loose, but it just scraped the heel; it is like it caught when I was raising my foot up, not when I was setting it down;" that she examined it, and it was "kind of under a bit, and there was where I caught my heel." Her shoe was examined, after she returned home, and it showed that the walk had scraped the heel; that there was a small crumb of cement on the heel. We deem it unnecessary to go into the evidence in further detail. It was shown by the evidence that this defect was a short distance from the business part of town, extensively traveled, and had existed for a year or a year and a half prior to the accident. It is shown that another party tripped at this same point, but it is not claimed that actual knowledge thereof was brought home to the city.

Appellant cites numerous cases from other jurisdictions where it has been held that a break in the surface, of 2 or 3 inches, is in a reasonably safe condition, as a matter of law, and that there was no negligence. The Iowa case relied upon is *Johnson v. City of Ames*, 181 Iowa 65. That case was distinguished in *Welsh v. City of Des Moines*, (Iowa) 170 N. W. 369 (not officially reported). The same distinction may be made in the instant case. The facts in the instant case are more nearly like the *Welsh* case. We think the instant case is ruled by the *Welsh* case. In the instant case, it is not so much a question as to the depth of the hole, but is a question whether the hole was danger-

ous because of the condition of the jagged, overhanging edge, and the other circumstances. See, also, *Geer v. City of Des Moines,* 183 Iowa 837.

The trial court did not err in submitting the case to the jury.

2. Appellant states in argument that, at the trial, defendant had no evidence whatever going directly to disprove that the plaintiff suffered any injury at the point in question, and that the newly discovered

2. NEW TRIAL: newly discovered evidence: failure to investigate known facts.

evidence went directly to that point. Defendant filed, as a part of the motion for new trial, the affidavit of one Barnes, in which it is stated that, about 8 o'clock in the evening of December 23d, he was passing south, along the walk in question, and saw a woman with two children, passing south at a point described, which would be at the place in question; that she was about 100 feet ahead of him; that he couldn't say whether the woman stumbled or not, but she dropped some things,—packages, —but that she did not fall; that he noticed nothing the matter with her, as he passed; that he went on south to the home of Ewers, where he turned in; that he thinks Ewers was with him, but is not positive; that he did not stop and offer any assistance, because there did not seem to be anything the matter, except the dropping of the packages. No affidavit by Ewers was filed. Defendant's attorney filed his affidavit, stating that he consulted with every person as to whom he had received any information, or who might know of anything which could be used as evidence in the case; that he did not receive any information that Barnes knew anything of it; that the matters in Barnes' affidavit did not come to his knowledge until after trial; that it was impossible for him to personally interview every citizen of the city as to what they might know. Barnes does not identify plaintiff as the woman he saw, but defendant claims that the proper inference to be drawn from his testimony is that it was she. Plaintiff testifies that her two children were with her, but she says

she had no packages; that she had only a book which she had just secured at the library, and with which she was returning home. From her testimony it appears that the accident must have happened about 7:30 o'clock; that she lay or sat on the walk a few minutes; and that she was at her home about 8 o'clock, the time Barnes' claims to have seen her. She says that one man passed her, a little after she fell, and that she saw no one else in the vicinity, other than this man. Plaintiff's 13-year-old daughter, who was with her, testifies that the man who passed, went into Stockberger's, whose home is about at the place of the defect; so that, at the trial, counsel for defendant had knowledge, from the above testimony, in regard to a man who was passing. There is no showing that there was any inquiry made at Stockberger's house, or of Ewers. It is not shown how counsel learned of the Barnes testimony. It appears that there were a great many people on the street, doing their Christmas shopping. Appellee argues that the alleged newly discovered evidence is not material, and is cumulative. It appears to us, however, that it is more a question of diligence; and besides, the evidence is somewhat indefinite. The trial court did not err in overruling the motion on this ground.

3. The court did not abuse its discretion in denying defendant's request that the jury view the walk and defect.

3. TRIAL: view of premises.

The trial occurred more than two years after the injury, and the evidence shows that the conditions had changed, and that the hole was deeper.

4. It is assigned as error that the court erred in not giving an instruction defining the condition in which a walk must be, in order to be in a reasonably safe condition,

4. NEGLIGENCE: defining reasonable condition.

and that it was the duty of the court to instruct upon all issues with reasonable fullness, and so on. Defendant did not request any instruction in regard to this. The court did instruct that, if the jury

should find that the walk, at the time and place, was out of repair, in the manner claimed by plaintiff, and was dangerous and unsafe for public travel, etc. And again:

"Par. 8. You are instructed that a municipal corporation such as this defendant is not an insurer of the safety of those who travel upon its streets, but it is bound to use ordinary care to keep its sidewalks in a reasonably safe condition for travel. If it does this, it has done all the law requires of it."

Ordinary care was defined in another instruction. It might be somewhat difficult for a court to attempt to "define the condition in which a walk must be, in order to be in a reasonably safe condition." Appellant cites a number of authorities; among them, *Overhouser v. American Cereal Co.*, 128 Iowa 580, 585, from which defendant quotes at some length. In that case, there was a question in regard to an independent contractor, and the court held that, under such circumstances, where negligence was claimed, there should have been a definition, or a description of an independent contractor. It was also said in that case:

"Now, while the words and terms in ordinary use, and therefore presumably within the general understanding of men, need not be defined in instructions, yet, in all cases where words or terms are used in a legal or technical sense, differing from that which the common use of the words imports, it is at least proper, and it is not going too far to say that, in many cases, it may be necessary, to give definitive or explanatory instructions."

It occurs to us that, in this case, there is nothing particularly difficult for a jury to understand about reasonably safe condition. We think the court covered this point sufficiently, especially in the absence of a requested instruction. The court is not required to instruct as to issues of fact, which involve their common experience, and the common experience or understanding of the average man. Appellee cites at this point *Stanley v. Cedar Rapids & M. C. R. Co.*, 119 Iowa 526; *Taylor v. Chicago, St. P. & K. C. R.*

*Co.,* 76 Iowa 753; *Bever v. Spangler,* 93 Iowa 576, 610; and other cases which we shall not take the time to discuss.

5. It is thought by appellant that the court erred in overruling defendant's objections to some of the testimony of physicians, in which they described plaintiff's health and physical condition a year, and, in another instance, two years, after the injury; because it was too remote. Plaintiff claimed that her pain and suffering and injury continued up to the time of the trial, and alleges that she will suffer in the future. Doctor Mammen testified, over defendant's objection:

5. NEGLIGENCE: evidence: condition after injury.

"Q. What condition did you find Mrs. Bailey in at that time [a few days before the trial]? (Objected to as too remote from point of time to throw any light upon an injury suffered two years ago.) A. Her arms seemed to bother her. The irregular surface, you might say, at the point where it was bruised, and the right limb was drawn up by muscles over on the pelvis, making an apparent shortening of the limb. The uterus was fallen down, and out of its normal condition. Q. What would be the effect of a condition as you have described? (Objected to, as calling for a conclusion. Overruled.) A. It would be very apt to produce nervous conditions. Her arm would give her pain. The condition of the leg would produce a slight limp. The uterus will not correct itself, but might correct it by some operation. She has been menstruating too frequently."

This evidence was given in chief. On cross-examination, the doctor said that the misplacement of the uterus was not caused by the fall or miscarriage. Thereupon, the court sustained defendant's objection as to the conclusion, and struck out the answer. The objection is somewhat indefinite, and refers to the condition of her arm and limb, as well as to the misplaced uterus. The objection was not specific. A part of the evidence was competent and proper, enough to show the condition of her limb and arm at the time of the trial, and the circumstances. Dr. Cole testified that he did not remember whether there was a misplacement

of the uterus, and his testimony was somewhat different from that of Dr. Mammen. Dr. Cole says that a misplaced uterus may cause a miscarriage, and more often the reverse; that discharge of the womb causes a tendency to enlarge, and to remain enlarged, and that, if enlarged, it is heavy, and will tilt on its weight. We think there was no error at this point.

We find no reversible error in the record, and the judgment is, therefore,—*Affirmed.*

WEAVER, C. J., EVANS and SALINGER, JJ., concur.