GILBERT DANNER, Appellee, v. F. H. COOPER et al., Appellants.

No. 41286.

DECEMBER 13, 1932.

REHEARING DENIED APRIL 6, 1933.

Keenan, Barnes & Clovis, for appellants.

Wilson & Wilson, for appellee.

WAGNER, J.—We deem it advisable to first visualize the salient facts relative to the manner in which the plaintiff received the injury.

The accident occurred May 20, 1930, near the west boundary of the city of Shenandoah, on Sheridan avenue, which runs east and west. Extending west from Sheridan avenue, without the corporate limits of the city, is primary highway No. 3. Along the westerly limits of the city of Shenandoah is a north and south highway which crosses Sheridan avenue and highway No. 3; this north and south highway is not paved and is known in the record both as "Fremont Street" and "The County Line Road." There are stop signs on Fremont street both to the north and south of the intersection. The pavement on highway No. 3 is 18 feet wide west of the center of the intersection, and from that point the pavement gradually widens, connecting with Sheridan avenue, upon which the pavement is 30 feet wide. The accident in which plaintiff received the injury occurred a short distance east of the intersection.

A ton and a half truck, owned by the defendant Cooper and driven by the defendant Bennett at the time in question, approached from the west. The driver of the truck, as he approached from the west, had a clear vision of the intersection for a distance of more than a quarter of a mile.

On the morning of the accident, the plaintiff and Josh Niel, another employee of the Henry Field Seed Company, while engaged within the scope of their employment, approached the intersection from the south on a hayrack placed on a wagon drawn by a team of horses driven by Niel. The team was stopped at the intersection and then turned to the east, entering Sheridan avenue. At the time of the accident, the team was traveling in an easterly direction upon Sheridan avenue, east of the intersection. The plaintiff testified that, as they (he and his coemployee) approached the intersection from the south, he was seated on the right-hand side of the hayrack, with his feet hanging out. The testimony of the plaintiff and a number of witnesses in his behalf, who saw the accident, is to the effect that, as the team was going east, the plaintiff was on the right side of the hayrack, with his feet hanging over, or close to the curb. This testimony is uncontradicted.

At the time in question, a car driven by Utterbach came from the north on Fremont street. All of the testimony offered in behalf of the plaintiff from a number of eye witnesses is to the effect that the Utterbach car was standing still at the time when the truck driven by Bennett collided therewith; that no portion of the Utterbach car was upon or protruded over the pavement at that time,

but that the bumper was at the north line of the pavement, or in close proximity thereto. As to this subject, the plaintiff testified:

"I saw the other car sitting on the north side of the street before we drove on the pavement. It was right up close to the pavement, but not on it.

"Q. How close was it to the pavement when you saw it? A. I couldn't say, as only his bumper was up to the pavement, as close as it could get.

"Q. Was it one foot from the pavement or ten feet? A. Well, it could have been a foot, but it wasn't no ten feet. I observed that when I went around the corner there on the hayrack."

The truck approached and entered the intersection from the west with considerable speed. One of plaintiff's witnesses testified that when he first saw the truck coming it was running 40 or 50 miles an hour, and that it slowed up very little from that time until it hit. "I would say it was going 40 miles an hour when it hit the Utterbach car. I don't think it slowed up much from the time it hit the Utterbach car until it hit the hayrack." There is other testimony in the record to the same effect.

It is shown by the record that, as Bennett approached the intersection from the west, he turned the truck to the left and that the first collision was between the truck and the Utterbach car. This collision occurred between the front portion of the Utterbach car and the rear portion of the truck. The truck was carrying a spare tire in front of the left hind wheel, which protruded several inches from the body of the truck. It was this spare tire and left hind wheel of the truck which collided with the front portion of the Utterbach car.

The question of fact upon which Bennett and the witnesses for the plaintiff differ is as to whether or not the Utterbach car stood still or whether it was moving into the intersection at the time of the collision between the two cars. All of the witnesses to the accident, except Bennett, testified that the Utterbach car remained stationary at the north edge of the paving. Bennett testified:

"As I entered the intersection, he (Utterbach) turned over to the left side of the pavement, probably from eighteen inches to twenty-four inches from the north side of the pavement. I saw the Utterbach car move as we hit. It began to move just as I entered the intersection. I tried to swing my car to the right to try to miss

and avoid the accident. He (Utterbach) was sitting almost in the center of the road (Fremont Street). I saw Mr. Utterbach's car sitting there, and to pass the hayrack I pulled to the left side of the pavement. And just as I entered the intersection, Mr. Utterbach's car started forward, and the right end of his car started forward, and the right end of his front bumper and the front fender hit the spare tire and caught my left rear wheel, just as I turned to the right to avoid the accident, and that threw me across the street."

The Utterbach car was shoved to the east side of Fremont street, facing east, or a little northeast. After the collision between the truck and the Utterbach car, the truck veered to the right and collided with the rear end of the hayrack which was proceeding a short distance east of the intersection in an easterly direction upon the right-hand side of the paved street.

As the result of the collision between the truck and the hayrack, plaintiff was thrown from the hayrack and injured. Plaintiff's evidence shows that for a period of five weeks he was not able to work at all, and that since said time his employer has given him elevator work and other work of a character lighter than that which he previously performed. There is testimony in the record from which the jury could properly find that the injury to plaintiff's back and pelvis, resulting from the accident, is permanent. Upon trial of the issues, the jury returned a verdict in favor of the plaintiff in the sum of $1,825.

The appellants complain that the court erred in overruling their motion for a new trial based upon newly discovered evidence, which they claim is material and not merely cumulative or impeaching; and which they assert is admissible as admissions and declarations of the plaintiff, and that they could not with reasonable diligence have discovered the same and produced it at the trial. It is shown that the plaintiff, shortly after the injury, made claim for compensation under the Workmen's Compensation Law (Code 1931, section 1361 et seq.), and that in the office of the industrial commissioner, in Des Moines, there is on file a memorandum of agreement signed by plaintiff and by an officer of his employer, which provides:

"Date when disability commenced. May 20, 1930. If disability has ended, give date of ending. June 10, 1930."

It is also shown that in the office of the Employers' Mutual Casualty Company of Des Moines, the company which insured the

employer for its liability under the Workmen's Compensation Law, there is on file a statement signed by the plaintiff, which provides:

"5-21-30. Statement of Gilbert Danner.

"I am 36 years old. I have no children. I am living with my wife.

"Yesterday morning, around 9 A. M., Josh Niel was hauling manure to Number 2 house. I went with Josh to help him. We got manure at the Fair grounds and dumped it at Number 2 house. We were returning from Number 2 house on the dirt road and came to the pavement from the south.

"I was sitting on the side of the wagon facing west. Jos was standing up in the wagon. When we came on the paving there was a Ford touring car parked on the dirt facing south on the north side of the pavement. It seems after we got on the pavement and had gone 15 to 20 feet east that the Ford pulled out on the pavement, and it looked to me like it was going on across the pavement.

"An Omaha truck was coming from the west at high speed, I would say 45 miles an hour. This truck plowed into the Ford touring car. I don't know what hit us or what happened to me.

"[Signed]   Gilbert Danner."

The foregoing signed statement by the plaintiff is the newly discovered evidence relied upon by the appellants. It is provided by section 11550, Codes 1927 and 1931, that a new trial shall be granted "on the application of the party aggrieved, for the following causes affecting materially the substantial rights of such party: * * * 2. Misconduct of the * * * prevailing party. * * * 7. Newly discovered evidence, material for the party applying, which he could not with reasonable diligence have discovered and produced at the trial." It will be noted that the statement on file in the office of the industrial commissioner, at most, goes not to the plaintiff's right of action, but bears only upon the length of the period of disability. See Stodgel v. Elder, 172 Iowa 739, at page 742, 154 N. W. 877. This statement is only impeaching in character. It will also be noted that the statement on file in the office of the insurance company differs from plaintiff's testimony and the testimony of all of his eyewitnesses, in that it is therein stated that plaintiff was located on the left instead of the right side of the hayrack. This portion of the statement could only be impeaching. The statement that the truck was coming from the west at high speed "say 45 miles

1360

an hour" and "plowed into the Ford touring car" is not even con-
tradictory to the testimony offered by the plaintiff during the trial
of the instant case; nor is the last sentence of said signed statement.
The only remaining portion thereof which is any way contradictory
to the testimony of the plaintiff, or that of his eyewitnesses, is the
statement:

"It seems after we got on the pavement and had gone 15 to 20
feet east that the Ford pulled out on the pavement, and it looked
to me like it was going on across the pavement."

It is the universal holding of this court that a new trial will
not be granted on newly discovered evidence which is only cumula-
tive, or upon newly discovered evidence which is only impeaching
in character. This rule is so well established as not to require citation
of authorities. But see annotations to Code of Iowa, vol. I, section
417, p. 1577, and sections 438 and 439, p. 1579.

The appellants, relying upon Wayt v. Burlington, C. R. &
M. R. Co., 45 Iowa 217, City of Des Moines v. Frisk, 176 Iowa 702,
158 N. W. 590, Walterick v. Hamilton, 179 Iowa 607, 161 N. W.
684, and Henderson v. Edwards, 191 Iowa 871, 183 N. W. 583, 16
A. L. R. 1090, contend that the foregoing quoted statement signed by
the plaintiff constitutes substantive evidence as to how the accident
occurred; that said admission is not evidence of the same kind, to the
same point, as was introduced during the trial of the case, and that,
therefore, said admission constitutes not cumulative nor impeaching
testimony, but material substantive evidence as to how the injury
occurred. Assuming, without deciding, that the appellants are right
in this contention, still, under the record in the instant case, they
are not entitled to a new trial. The applicant for a new trial on
the ground of newly discovered evidence must have used due dili-
gence to discover and produce the evidence at the trial. See Bailey
v. City of LeMars, 189 Iowa 751, 179 N. W. 73; In re Estate of
Berry, 207 Iowa 605, 223 N. W. 480; First State Bank of Riverside
v. Tobin, 204 Iowa 456, 215 N. W. 767; DeWitt v. Larson, 185
Iowa 1138, 171 N. W. 681; North American National Insurance
Company v. Holstrum, 208 Iowa 722, 217 N. W. 239, 224 N. W.
492; Carpenter v. Loetscher-Jaeger Mfg. Co., 178 Iowa 320, 157
N. W. 938; Lindauer Bros. & Co. v. Hay, 61 Iowa 663, 17 N. W.
98; Millard v. Singer, 2 G. Greene (Iowa) 144; annotations Code
of Iowa, vol. I, section 388, p. 1575.

The burden is upon the appellants to show such due diligence. The affidavits must contain more than the mere conclusions of the movants and their attorneys that they have made diligent effort to obtain the evidence, or that they have exercised due diligence in that respect. The affidavits must show what was done in order to discover and produce the evidence. See First State Bank of Riverside v. Tobin, 204 Iowa 456, 215 N.W. 767; Smith v. Wagaman, 58 Iowa 11, 11 N.W. 713. The affidavit of the appellants' attorneys states:

"That we did not know that workmen's compensation had been paid to the plaintiff until at the time of the trial, when we made the discovery in some manner, *which we do not remember;* and that we did not find out what insurance company paid the claim until after the trial was over." (Writer's italics.)

The affidavit further states that the aforesaid signed statements are in the city of Des Moines and can easily be produced. It is shown by the record that the Henry Field Seed Company, a corporation, was reorganized during the summer of 1930 and is now known as the Henry Field Company; that the latter company has taken over the property of the former company, and that one of the members of the firm of attorneys representing the appellants is a director of the latter company; that said firm of attorneys was intrusted with the matter of making investigation as to the evidence material to the trial of the case. It is shown that the Henry Field Seed Company employed many people, and it must have been known to appellants' attorneys that the business conducted by said company was such as to subject it to the provisions of the Workmen's Compensation Law. Indeed, the record shows that the appellants' attorneys made inquiry of one of the officers of the company relative to the fact as to whether or not compensation was paid to the plaintiff at the time of a prior injury in 1924 or 1926, at which time the plaintiff was not working for the Henry Field Seed Company, but for another company. The stubborn fact remains that the appellants' attorneys, as stated in their affidavit, did, at the time of the trial, make discovery in some manner that the plaintiff had been paid workman's compensation. Due diligence would have suggested that there would probably be a statement relative thereto in both the offices of the industrial commissioner and of the insurance company. Due diligence would have suggested inquiry to be made of the

officers of the Henry Field Seed Company or at the office of the industrial commissioner. Such inquiries would easily have led to and produced the evidence. The record does not show that they even so much as used the telephone to ascertain whether any statements were on file. No inquiry was made of the plaintiff as a witness. The record shows that the trial was begun in the trial court on March 19, 1931. We fail to find in the record when the trial was concluded, but the appellants were given until the 3d day of April, 1931, in which to file motion for new trial and exceptions to instructions. The motion was filed on April 2d, stating that they had discovered this evidence on the 1st day of April. That documentary evidence is discovered soon after the trial, by inquiry or search, usually indicates that proper diligence was not exercised to discover such evidence before the trial was concluded. See 46 C. J. 255; Millard v. Singer, 2 G. Greene (Iowa) 144. In the latter case this court declared:

"But why was it [the evidence] not produced on the trial? It might have been as easily procured before the trial as after it, had the plaintiff exercised ordinary diligence in preparing for the trial. It was within his power to procure it, and he should have done so. If courts would allow a party thus to neglect the necessary means of making out his case, at the proper time, and then upon a showing, after verdict against him, he could produce evidence which would give him a new trial, there would be no end to litigation."

We are abidingly satisfied that the appellants have failed to show due diligence, upon their part, to ascertain whether such evidence existed, and to produce it at the time of the trial, even after having the knowledge at the time of the trial, which should have suggested that statements signed by the plaintiff were probably on file where they were found by them on the 1st day of April. It is undoubtedly true that neither appellants nor their attorneys knew of the contents of the signed statements upon which they now rely; but the record shows they did nothing until after the trial to ascertain whether any statements were on file, where it would naturally be expected that any such statements would be found. There is nothing in the record to show that, after the trial, they received any information which prompted them to make the investigation concerning the statements which they did not know before the trial was concluded.

Moreover, whether a new trial shall be granted on account of

newly discovered evidence, although it may be material, is ordinarily a matter which rests largely within the sound legal discretion of the trial court. See DeWitt v. Larson, 185 Iowa 1138, 171 N. W. 681; Elmore v. Des Moines City Railway Company, 207 Iowa 862, 224 N. W. 28; Rockwell v. Ketchum, 149 Iowa 507, 128 N. W. 940; First State Bank of Riverside v. Tobin, 204 Iowa 456, 215 N. W. 767; and this court will not interfere, in the absence of a showing of abuse of such discretion. It is sufficient to say there is no abuse of discretion shown in the instant case.

The appellants also assert, in substance, that the aforesaid signed statements show that the plaintiff introduced in evidence false and perjured testimony, and that he is therefore guilty of misconduct, and that a new trial should be granted under the provisions of paragraph 2, section 11550, Codes 1927 and 1931. There is no merit in this contention of the appellants, for all of the testimony from the various witnesses offered in behalf of the plaintiff corroborated the testimony given by him at the trial. The mere fact that plaintiff, himself, may have made a written statement inconsistent with his testimony, does not prove that his testimony is false or that he is guilty of perjury; much less that the testimony of his supporting witnesses is such as to be false or constitute perjury. Moreover, some of the testimony offered by the plaintiff tends to establish the fact that he was unconscious until late in the afternoon or evening of May 21, 1930, the date on which one of the statements purports to bear his signature, and there is nothing in the record as to what hour of the day the statement was signed by him. We are abidingly satisfied that the trial court did not abuse the legal discretion vested in him by overruling appellants' motion for a new trial, based on newly discovered evidence.

All except one of the remaining assignments of error relate to the rulings of the court on their exceptions to various instructions, which we will now proceed to consider. In one of the instructions, the court permitted the jury to allow, as an element of recovery, future pain and suffering in the event that they should find from the evidence that plaintiff's injury is permanent and that he will suffer pain in the future. Appellants' objection is that there is no evidence, expert or otherwise, to the effect that the plaintiff will suffer pain in the future. Appellants' contention is devoid of merit. When there is evidence from which the jury may properly find that the plaintiff is permanently injured, they may then properly take

into consideration future pain and suffering in estimating the damages, if, from the whole evidence, such will be the result of the injury, though no witness testifies that pain and suffering will continue, or for what length of time. See Smith v. City of Sioux City, 119 Iowa 50, 93 N. W. 81; Jordan v. Cedar Rapids & Marion City Railway Company, 124 Iowa 177, 99 N. W. 693; Evans v. Elwood, 123 Iowa 92, 98 N. W. 584; Pettermann v. City of Burlington, 170 Iowa 555, 153 N. W. 154. There is evidence in the instant case to the effect that plaintiff's injury, as the result of the accident, is permanent, and that he suffered pain therefrom up until and including the time of the trial. In Jordan v. Cedar Rapids & Marion City Railway Company, 124 Iowa 177, 99 N. W. 693, 695, we said:

"The question of future pain is generally more or less speculative, because its existence or nonexistence is a matter very largely within the knowledge of the injured person alone; but where there is evidence of a permanent injury, and of present pain produced thereby, the jury may consider such facts, and conclude therefrom that future pain may be suffered, and we know of no case in this state holding a contrary view."

■ In the petition the plaintiff alleges that he has suffered damages as follows, to wit: "* * * For physical pain and suffering at the time of the accident, and future pain and suffering, $2500.00 * * * For mental pain and suffering, $400.00."

In one of the instructions, the court told the jury:

"The plaintiff's recovery cannot in any event exceed the sum of $2900.00 for physical pain and suffering at the time of the accident, and future pain and suffering."

The appellants assert that the court committed error in the giving of said instruction, in that the court failed to limit the recovery for physical pain and suffering, present and future, to the amount claimed in the petition. There is no prejudicial error at this point. The court in the instructions limited the jury to a recovery of $3,225. Additional items for which he allowed recovery being $150 for loss of time from work, and $175 for doctor, nursing, and hospital bills. The verdict was for the sum of $1,825. The amount allowed in the verdict for pain and suffering, whether physical or mental, is not in excess of the amounts claimed in the petition, and in another instruction the jury was told that they might allow the

plaintiff such amount as in their judgment will fairly compensate him for any physical and mental pain and suffering he is shown to have endured to this time by reason of the injuries received by him at the time in question, and that if they should find that such injuries received by the plaintiff are of a permanent nature, and that he will suffer pain in the future by reason thereof, then such further sum as in their judgment will fairly compensate him for any pain and suffering which the evidence shows will be reasonably certain to be endured by him in the future by reason of such injury.

That there is no prejudicial error in appellants' contention at this point, see Evans v. Elwood, 123 Iowa 92, 98 N. W. 584; Gronan v. Kukkuck, 59 Iowa 18, 12 N. W. 748; Ousley v. Hampe, 128 Iowa 675, 105 N. W. 122; Homan v. Franklin County, 90 Iowa 185, 57 N. W. 703.

It is shown by the foregoing authorities that physical and mental pain and suffering constitute elements of general damage, and need not be specially claimed.

In view of the allegations of the petition and the specific instructions relative thereto, hereinbefore mentioned, and the fact that it is obvious that the amount included in the verdict for pain and suffering is much less than the limit fixed in the petition and by the court in the instruction, it is quite apparent that there is no prejudicial error at this point.

In the aforesaid instruction, the court told the jury that the plaintiff's recovery could not in any event exceed the sum of $150 for loss of time from work. This is the amount claimed for said item in the petition. The appellants assert that the court committed error in said statement, for the reason that the jury was thereby allowed to return a verdict for the plaintiff for the loss of time from work to the extent of $150, although the evidence, without contradiction, shows that the plaintiff was earning prior to the injury $100 a month, and was absent from work only five weeks, and that therefore he could not have lost $150 for loss of time, *and that the court failed to limit the amount of the recovery to that shown in the evidence.* (Writer's italics.) It is true that the evidence shows that the plaintiff lost five weeks time from work, and there is no evidence that he has lost any additional time, although not engaged in the same work as before his injury. It is also true that the evidence shows that, at the time of his injury, he was receiving as wages $100 a month. It would have been better had the court in said instruction

told the jury that the plaintiff could not recover for loss of time an amount in excess of $100 per month for the length of time which the evidence shows he has lost. But the appellants are in error in the assertion that the court failed to limit the amount of the recovery to that shown· in the evidence. In other instructions, the court did so limit it. To illustrate: In instruction No. 4 he is required to establish the amount of his damages by a preponderance of the evidence. In another instruction the jury is told to base their verdict solely upon the evidence and the law as given by the court.

It is a familiar rule that instructions must be considered as a connected whole, and if, when so considered, it can be said that· the jury was not misled, there will not be a reversal because of use of language in a single paragraph. Elmore v. Des Moines City Railway Company, 207 Iowa 862, 224 N. W. 28. Construing, as we must, the instructions as a connected whole, it cannot be said that there is prejudicial error at this point.

The appellants complain because the court in the instruc-tions submitted to the jury excessive speed as a ground of negligence. Their contention at this point is that there is no issue of negligence' as to rate of speed in the case; that said issue had been withdrawn by an amendment filed by the plaintiff.

In the substituted petition, the plaintiff alleges:

"That when he (Bennett) arrived at said intersection and at·tempted to pass said hayrack on the north side thereof, both vehicles moving toward the east along said Sheridan Avenue, he (Bennett) was driving at an excessive, illegal and negligent rate of speed, *and far in excess of that prescribed by the ordinance of the city of Shenandoah, Iowa.*" (Writer's italics.)

In an amendment to said substituted petition, the plaintiff alleges that he "withdraws the issue tendered therein, wherein plaintiff pleads the existence of a city ordinance and the violation of this ordinance by the defendants, hereby amending his amended and substituted petition and striking therefrom all reference to a city ordinance of the city of Shenandoah, Iowa, and the violation thereof by the defendant, Wilber Bennett".

It is quite clear that the appellants are wrong in their conten-tion, as the only averment that was withdrawn by the amendment was the alleged violation of the ordinance of the city of Shenandoah.

The allegation of excessive, illegal, and negligent rate of speed still remains in the substituted petition.

The court in instruction No. 7 quoted section 2, chapter 128, Acts 43 G. A., now comprising section 5029, Code 1931. This act became effective July 4, 1929, and constituted a part of the statutory law at the time of the accident. He then told the jury in said instruction:

"If you find that said Wilber Bennett at the time and place in question was driving at a greater rate of speed than an ordinarily prudent and cautious person would have driven the motor vehicle he was driving when placed under the same or similar circumstances, or that he was driving in violation of the foregoing statute, then you would be warranted in finding that he was negligent as claimed by the plaintiff in this respect. But, on the other hand, if you find that at said time and place said Wilber Bennett was not driving at a greater rate of speed than an ordinarily prudent and cautious person would have driven the motor vehicle he was driving when placed under the same or similar circumstances, and that he was not driving in violation of the foregoing statute, then he would not be negligent as claimed by the plaintiff in this respect." *

The appellants complain of said instruction.

A violation of, or noncompliance with, said statute, without proof of legal excuse for noncompliance, constitutes negligence. See Harvey v. Knowles Storage & Moving Company, 215 Iowa 35, 244 N. W. 660; Wosoba v. Kenyon, 215 Iowa 226, 243 N. W. 569.

The appellants' complaint of said instruction is that the petition charges only negligence at common law, and was not sufficient to constitute a charge of negligence for a violation of the statute. They frankly and correctly admit in their argument that it is not necessary to plead a statute of the state as a conclusion of law. It is sufficient to say at this point that if the facts rendering the statute applicable are pleaded, this is all that is required. See Bradbury v. Chicago, R. I. & P. Ry. Co., 149 Iowa 51, at page 65, 128 N. W. 1, 40 L. R. A. (N. S.) 684. The allegations of the petition are:

"That he (Bennett) was driving at an excessive, *illegal* and negligent rate of speed." (Writer's italics.)

It is quite obvious that said allegation, in the absence of an

attack by motion, is sufficient to render the aforesaid statutory law applicable to the situation. Appellants' contention at this point is devoid of merit.

The plaintiff, in the substituted petition, alleges as a ground of negligence that Wilber Bennett "lost control of his car." The court in instruction No. 8 submitted this ground of negligence to the jury, paraphrasing the same in his own language by saying:

"As respects this ground of negligence, it was the duty of said Wilber Bennett at the time and place in question to · exercise such control over the movement of the motor vehicle he was driving that a person of ordinary care and prudence would have exercised when placed under the same or similar circumstances," etc.

The appellants complain because the court in said instruction submitted failure on the part of Bennett to "exercise" control over the automobile. A fair construction of the pleaded allegation is in accordance with that placed thereon by the trial court in said instruction. That it was the statutory duty of the defendant Bennett to have control of his car, see section 5031, Codes 1927 and 1931. It was not necessary that the court submit the pleaded ground of negligence in the exact language of the pleaded allegation. See Rulison v. Victor X-ray Corporation, 207 Iowa 895, 223 N. W. 745; Buchanan v. Hurd Creamery Company, 215 Iowa 415, 246 N. W. 41.

The court in another instruction quite properly told the jury that if they should find that, as the defendant Bennett was about to overtake the hayrack upon which the plaintiff was riding, a third person drove an automobile against the motor vehicle driven by Bennett, and caused Bennett "to lose control thereof," and that said third person driving his automobile against the motor vehicle said Bennett was driving was the sole cause of the accident in question, and that but for such third person so driving his automobile against the motor vehicle said Bennett was driving the injuries complained of by plaintiff would not have occurred, then it could not be said that any negligence on the part of Bennett was the direct or proximate cause of the injuries complained of by the plaintiff. It is obvious that the rights of the appellants were amply protected, and that there is no merit in the exception taken by the appellants to the aforesaid instruction.

The appellants further complain that the verdict of $1,825 is excessive. There is evidence from which the jury could properly

find that the plaintiff has suffered, is suffering, and will continue to suffer, pain. As we have often declared, and as the court instructed the jury in the instant case, there is no exact rule of law whereby damages for physical and mental pain and suffering can be accurately measured, and, in awarding such damages, much is necessarily left to the sound judgment and discretion of the jury.

We find nothing in the record to indicate that the verdict is the result of passion or prejudice. The trial was conducted in an orderly manner; the jury has fixed the amount, as they saw it, of plaintiff's damages, and the amount has passed the scrutiny of the trial court. We find nothing in the record which would justify us in saying that the amount of the verdict is excessive.

We have carefully considered every objection raised by the appellants to the errors alleged to have been committed by the court in overruling their motion for new trial, and their exceptions to the court's instructions. We find no prejudicial error, and the judgment of the trial court is hereby affirmed.—Affirmed.

STEVENS, C. J., and FAVILLE, DE GRAFF, and ALBERT, JJ., concur.