David Warren, Appellee, v. Chicago, Burlington & Quincy Railroad Company, Appellant.

No. 42644.

March 5, 1935.

Mabry & Mabry and J. C. Pryor, for appellant.

Theodore B. Perry, for appellee.

Richards, J.—▮▮ In its operation of a railway, appellant for many years has maintained the road crossing at a certain point where its railway track crosses a public road in Monroe county. At this crossing appellee's horse received the injury damages for which are sought. Appellee claims that appellant maintained the crossing in a manner that was negligent. That by reason thereof, on December 4, 1931, while appellee, proceeding from east to west,

was driving a horse and a mare, hitched to a wagon, over this crossing, the left hind foot of the horse became caught in an opening between the east rail and the parallel crossing plank next inside this rail, resulting in injuries to and death of the horse from tetanus. The railway ran north and south, the highway east and west.

The sufficiency of the evidence to warrant the court in finding appellant negligent we first consider.

In Criss v. Chicago & N. W. Ry. Co., 88 Iowa 741, 55 N. W. 523, negligence alleged by plaintiff consisted in defendant allowing the opening between the plank in the crossing and the rails of the track to be so wide that plaintiff's horse, in crossing the track, crowded his foot in the opening and was unable to remove it, and was pinioned there until struck by an engine. The evidence as to width of the opening was conflicting, the testimony of the witnesses putting it at from two and one-half to three and one-half inches, others stating that, at the place where the hoof was wedged in, the opening was as wide as the breadth of their hands. Others stated that the opening was so wide as to attract their attention when driving over the crossing, and induce them to avoid the widest part of it; and the testimony of a civil engineer gives three inches as the limit in width of a properly constructed crossing. This court held that the evidence as to the width of the opening authorized the jury's finding that defendant was negligent in permitting it to be in that condition.

In Graves v. Chicago, R. I. & P. Ry. Co., 207 Iowa 30, 222 N. W. 344, it was held that the alleged negligence of defendant in its manner of maintaining a private farm crossing was a question for the jury, there having been testimony that the top of the rail was three inches higher than the plank at the outside of the rail and that there were no planks between the rails and that there was a steep incline from the west, the court holding all of these matters considered together made the question of negligence one for the jury.

In the case at bar, the testimony as to the width of the opening was in conflict, the witnesses putting it at from one and three-fourths inches to three and one-fourth inches. There was testimony of appellant's foreman that the standard width is one and three-fourths inches. There was testimony that the plank next inside the rail was an inch lower than the top of the rail, and that there was an ascent of about six feet in the approach to the track from the east grow-

ing steeper nearer the track, that the approach was a dirt road and wet and muddy on the day in question; there was testimony of appellant's roadmaster that a few weeks prior to December 4, 1931, he had repairs made to this crossing, the whole crossing before being repaired having been worn out and rotted in center and the ends stuck up making it unsafe. There was testimony that this repairing or rebuilding was subsequent to December 4, 1931. The roadmaster and section foreman testified that they frequently saw this crossing prior to December 4, 1931. We conclude that the question of appellant's negligence was for the court.

The sufficiency of the evidence to warrant the court in finding that appellant's negligence was the proximate cause of the loss of appellee's horse is denied by appellant. We are of the opinion, however, that there was sufficient evidence to warrant the court in holding that the foot of the horse slipped into the opening and was there caught as the team was pulling the wagon through the mud up on to the track, thereby the foot being severely injured from which tetanus developed killing the horse. The appellee was standing in the wagon, driving the team, and did not see the horse's foot in the opening. But his testimony is that when the team got on the railway track he saw the horse become stationary while the mare proceeded forward stretching out the horse the length of the double-trees; that he then stopped the team; and that what he then saw was that the horse just backed up "kinda hunkered down" and lifted up his left hind foot, got loose, and just stood there on the track; that he got out of the wagon, went to the horse, the horse holding up his foot and after while the horse began to put his foot down but did not rest his weight on it. Appellee's further testimony was that he saw in the mud a horse's footmark or track, the toe end of which extended an inch or less on to the plank and that this mark had the appearance of a slipping of the foot back and down into the opening. Appellee also described a cleaned off mark he saw on the horse's injured foot where the mud was wiped off and saw a crease in the hoof "and the width of the crease was just like a corner of the board had caught him". There was sufficient testimony to warrant the finding that the horse was injured by his foot being caught in the opening between the rail and the plank.

That there was evidence warranting the court in finding that tetanus developed from the injury also appears. The foot was so injured that the horse thereafter had difficulty in walking and

grew more lame until he died. One witness testified that on the next morning he saw the injured foot and describing its appearance said, "it wasn't really a crease; it had kinda bulged out instead of in, had· bulged out and been broke". He testified that after the horse died he again examined hoof and could see that the hoof was broken. Appellee testified that the horse continued to grow more lame and laid around and was cared for several times a day with various applications and poultices. Appellee testified that three or four days after the injury and after poulticing there was an exudation from the foot near the hair line. On December 14, a veterinary examined the horse, found the left hind foot injured, a break in the fore part of the foot, a little left of the center of the foot and a little below the hairline in the shell of the hoof. A little to the left of this opening the hoof had separated a little, naturally a little, loose a little around the hair line, and found the horse had tetanus. Horse died a day or two later. We conclude there was sufficient evidence to warrant the court in finding that appellant's negligence was the proximate cause of appellee's loss of the horse.

The existence or freedom from contributory negligence on the part of appellee was also a question of fact for the court, the evidence not establishing contributory negligence as a matter of law. Appellee's knowledge of the crossing and its danger was casual, gained from more or less frequent traveling over this road. True he knew there was a drop in the crossing. But the evidence by no means shows the existence of contributory negligence per se on the part of appellee, applying the pronouncement found in Smith v. City of Hamburg, 212 Iowa 1022, 237 N. W. 330.

Appellant moved for a new trial on the grounds of newly discovered evidence, supported by affidavit of appellant's division superintendent setting out in substance the following: That certain records showing time of replacing crossings over appellant's railway are in charge of said affiant. That on October 25, 1933, he found stored in the retired files of his office a distribution of labor report showing that on October 30, 1931, J. P. Feehan, section foreman, replanked and rebuilt the crossing involved in this suit. That said report which had previously been retired was in the files on October 18, 1933, the date of the trial of this case and none of the representatives of the company present at the trial had any knowledge of such report and that it was not available on said date in

Albia, Iowa. That affiant had no knowledge that such information would be material until after the case was tried when affiant learned that certain evidence of appellee was to the effect that the horse injured itself before the crossing had been repaired and that one of plaintiff's witnesses testified that nothing had been done to this crossing in repairing for sixteen years prior to the claimed injury. It will be noted that the purpose of this new evidence was to establish the date of the repair or the rebuilding of the crossing and was cumulative. The section foreman, Feehan, referred to in the affidavit, as well as the roadmaster of appellant, were present at the trial and testified for appellant as to the time of the repairing of the crossing. Feehan testified he had time books and records at home with reference to the matter. The roadmaster testified that to back him up as to the date, "we have records as to when the requisitions were made for plank", but as to having the records with him, he said, "Heavens, I couldn't begin to carry them in a box car, all the crossings we have to contend with". Appellee's petition had been filed April 14, 1932, alleging that the condition of the crossing complained of had existed for a long time prior to the injury, and for a long time prior the appellant had known of these conditions. In cross-examination of appellee, appellant's attorney sought to establish that the repairing had been done three weeks before the accident. The newly discovered evidence were records of the appellant and, of course, accessible during the year and a half between the commencement and the trial of the case. There is no showing in the affidavit that appellant could not with reasonable diligence have discovered and produced at the trial these records. On the contrary, appellant's employee witnesses made reference to such records in their testimony. There was at least as clear a burden on appellant or its attorneys to search out and produce this evidence if they desired to use the same as in the case of Danner v. Cooper, 215 Iowa 1354, 246 N. W. 223. The discretion of the court in overruling the motion on this ground should not be disturbed.

Upon the entire record, including appellant's exceptions to the court's ruling on evidence, we find no reversible error and conclude that the case should be and is affirmed.

ANDERSON, C. J., and ALBERT, DONEGAN, and PARSONS, JJ., concur.